**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37431**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2011 Opinion No. 29** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed:  May 18, 2011** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| MATTHEW LEE HURST, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Timothy Hansen, District Judge.

Orders denying motion to suppress evidence, relinquishing jurisdiction, and denying motion for reduction of sentence, affirmed.

Molly J. Huskey, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.  Shawn F. Wilkerson argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.  Kenneth K. Jorgensen argued.

_____

LANSING, Judge

Matthew Lee Hurst appeals from his conviction and sentence for lewd conduct with a minor under sixteen, Idaho Code § 18-1508.  He asserts that the district court erred by denying his motion to suppress evidence, by relinquishing jurisdiction, and by denying his motion for further reduction of his sentence.  We affirm.

**I.**

**FACTS AND PROCEDURE**

After Hurst's stepdaughter reported that Hurst had sexually molested her, an Ada County Sheriff's detective went to Hurst's place of work to talk to him.  The ensuing three and one-half-minute conversation between the two was audio recorded.  The detective told Hurst that there was a situation regarding his stepdaughter, invited Hurst to come to the sheriff's office for an interview, and offered him a ride.  Hurst hesitated and sought to inquire about the substance of

1

the "situation." The detective declined to provide detail and ultimately asked Hurst: "Are you willing to come down with me and talk or not?" Hurst replied: "Not without my lawyer." The detective then handcuffed and arrested Hurst and transported him the sheriff's office. Hurst was placed in an interview room, where his conversation with the detective was again recorded, this time on video. The detective read Hurst his *Miranda*[1] rights, and Hurst waived his right to remain silent and his right to counsel. During the interrogation that followed, Hurst confessed.

After formal charges were filed, Hurst moved to suppress his statements to the detective. He contended that while talking to the detective at Hurst's place of employment, he had effectively invoked his Fifth Amendment right to an attorney, and therefore the detective was prohibited from later interrogating him at the sheriff's office without the presence of Hurst's attorney. At a hearing on the suppression motion, the recorded conversations were entered into evidence and the detective testified. The district court denied the motion, holding that in order to preclude interrogation, an invocation of the right to counsel must be made during custodial interrogation and that Hurst's invocation of counsel was ineffective because it was made before he was placed in custody.

Pursuant to a plea bargain, Hurst entered a conditional plea of guilty to one count of lewd conduct, reserving the right to appeal from the denial of his suppression motion, and two additional lewd conduct charges were dismissed. The district court imposed a thirty-year sentence, with five years fixed, but retained jurisdiction. At the subsequent rider review hearing the district court relinquished jurisdiction but, at Hurst's request, reduced the fixed portion of the sentence to four years. Hurst subsequently filed a written motion for further reduction of the sentence. The district court denied the motion, holding that Idaho Criminal Rule 35 allowed only one request for a reduction of sentence.

Hurst appeals. He asserts that his invocation of his Fifth Amendment right to an attorney at his place of work precluded the detective from later interrogating him, regardless of whether he was in custody at the time of invocation. In the alternative, Hurst asserts that if custody is required for a valid invocation of the Fifth Amendment right to counsel, he was effectively in custody at the time even though he was not under formal arrest. Hurst also asserts that in light of his positive performance during retained jurisdiction the district court erred by relinquishing

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

jurisdiction and that the court erred by denying Hurst's written motion for further reduction of his sentence.

## II.

## ANALYSIS

In *Maryland v. Shatzer*, ___ U.S. ___, 130 S. Ct. 1213, 1219-20 (2010), the United States Supreme Court explained the origins and the parameters of the "Fifth Amendment right to counsel"[2] as follows:

> The Fifth Amendment, which applies to the States by virtue of the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964), provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5. In *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the Court adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right from the "inherently compelling pressures" of custodial interrogation. *Id.*, at 467, 86 S. Ct. 1602. The Court observed that "incommunicado interrogation" in an "unfamiliar," "police-dominated atmosphere," *id.*, at 456-457, 86 S. Ct. 1602, involves psychological pressures "which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely," *id.*, at 467, 86 S. Ct. 1602. Consequently, it reasoned, "[u]nless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice." *Id.*, at 458, 86 S. Ct. 1602.
>
> To counteract the coercive pressure, *Miranda* announced that police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney. *Id.*, at 444, 86 S. Ct. 1602. After the warnings are given, if the suspect indicates that he wishes to remain silent, the interrogation must cease. *Id.*, at 473-474, 86 S. Ct. 1602. Similarly, if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present. *Id.*, at 474, 86 S. Ct. 1602. Critically, however, a suspect can waive these rights. *Id.*, at 475, 86 S. Ct. 1602. To establish a valid waiver, the State must show that the waiver was knowing, intelligent, and voluntary under the "high standar[d] of proof for the waiver of constitutional rights [set forth in] *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)." *Id.*, at 475, 86 S. Ct. 1602.

---

[2] Strictly speaking, there is no "Fifth Amendment right to counsel." Instead, as explained in *Shatzer*, the right to be informed of and to the presence and assistance of counsel is afforded in custodial contexts, in limited circumstances, in order to protect a suspect's Fifth Amendment right against compelled self-incrimination during interrogation. *See Hughes v. State*, 148 Idaho 448, 457, 224 P.3d 515, 524 (Ct. App. 2009). The term has evolved as a shorthand way of describing the right involved.

In [*Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880 (1981)], the Court determined that *Zerbst*'s traditional standard for waiver was not sufficient to protect a suspect's right to have counsel present at a subsequent interrogation if he had previously requested counsel; "additional safeguards" were necessary. 451 U.S., at 484, 101 S. Ct. 1880. The Court therefore superimposed a "second layer of prophylaxis," *McNeil v. Wisconsin*, 501 U.S. 171, 176, 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991). *Edwards* held:

> "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. . . . [He] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S., at 484-485, 101 S. Ct. 1880.

The rationale of *Edwards* is that once a suspect indicates that "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect." *Arizona v. Roberson*, 486 U.S. 675, 681, 108 S. Ct. 2093, 100 L. Ed. 2d 704 (1988). Under this rule, a voluntary *Miranda* waiver is sufficient at the time of an initial attempted interrogation to protect a suspect's right to have counsel present, but it is not sufficient at the time of subsequent attempts if the suspect initially requested the presence of counsel. The implicit assumption, of course, is that the subsequent requests for interrogation pose a significantly greater risk of coercion. That increased risk results not only from the police's persistence in trying to get the suspect to talk, but also from the continued pressure that begins when the individual is taken into custody as a suspect and sought to be interrogated-pressure likely to "increase as custody is prolonged," *Minnick v. Mississippi*, 498 U.S. 146, 153, 111 S. Ct. 486, 112 L. Ed. 2d 489 (1990). The *Edwards* presumption of involuntariness ensures that police will not take advantage of the mounting coercive pressures of "prolonged police custody," *Roberson*, 486 U.S., at 686, 108 S. Ct. 2093, by repeatedly attempting to question a suspect who previously requested counsel until the suspect is "badgered into submission," *id.*, at 690, 108 S. Ct. 2093 (KENNEDY, J., dissenting).

From this discussion it is apparent that if Hurst effectively invoked a right to counsel at his place of work, the detective's subsequent interrogation of Hurst without his counsel was unlawful, and Hurst's statements were subject to suppression. Thus, the issues presented are whether a suspect must be in custody in order to invoke the "prophylactic protections" of *Miranda* and *Edwards* by requesting counsel and, if so, whether Hurst was "in custody" when he invoked at his place of work.

4

**A.    A Suspect Must be in Custody in Order to Effectively Invoke a Fifth Amendment Right to Counsel**

Hurst first argues that whether he was in custody when he invoked is irrelevant to the validity of his invocation of his right to counsel.  This is an issue not previously addressed by the appellate courts of this state.

Other state and federal jurisdictions, however, have held that a person must, at a minimum, be in custody in order to effectively invoke *Miranda* rights.  The relevant authority derives primarily from a United States Supreme Court decision, *McNeil v. Wisconsin*, 501 U.S. 171 (1991).  While not directly deciding the issue, the *McNeil* decision suggests that invocation is allowed only in the context of custodial interrogation.  The Supreme Court there held that an accused's exercise of his Sixth Amendment right to counsel during a judicial proceeding on one charge did not constitute an invocation of the Fifth Amendment right to counsel that would preclude police interrogation about an unrelated crime.  The Court reasoned:

> The purpose of the Sixth Amendment counsel guarantee--and hence the purpose of invoking it--is to "protec[t] the unaided layman at critical confrontations" with his "expert adversary," the government, *after* "the adverse positions of government and defendant have solidified" with respect to a particular alleged crime.  [*United States v. Gouveia*, 467 U.S. 180, 189, 104 S. Ct. 2292, 2298 (1984)].  The purpose of the *Miranda-Edwards* guarantee, on the other hand--and hence the purpose of invoking it--is to protect a quite different interest:  the suspect's "desire to deal with the police only through counsel," *Edwards*, *supra*, 451 U.S., at 484, 101 S. Ct., at 1884.  This is in one respect narrower than the interest protected by the Sixth Amendment guarantee (because it relates only to custodial interrogation) and in another respect broader (because it relates to interrogation regarding *any* suspected crime and attaches whether or not the "adversarial relationship" produced by a pending prosecution has yet arisen).  To invoke the Sixth Amendment interest is, as a matter of *fact*, *not* to invoke the *Miranda-Edwards* interest.  One might be quite willing to speak to the police without counsel present concerning many matters, but not the matter under prosecution.  It can be said, perhaps, that it is *likely* that one who has asked for counsel's assistance in defending against a prosecution would want counsel present for all custodial interrogation, even interrogation unrelated to the charge.  That is not necessarily true, since suspects often believe that they can avoid the laying of charges by demonstrating an assurance of innocence through frank and unassisted answers to questions.  But even if it were true, the *likelihood* that a suspect would wish counsel to be present is not the test for applicability of *Edwards*.  The rule of that case applies only when the suspect "ha[s] *expressed*" his wish for the particular sort of lawyerly assistance that is the subject of *Miranda. Edwards*, *supra*, 451 U.S., at 484, 101 S. Ct., at 1884 (emphasis added).  It requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial*

5

*interrogation by the police*. Requesting the assistance of an attorney at a bail hearing does not bear that construction. "[T]o find that [the defendant] invoked his Fifth Amendment right to counsel on the present charges merely by requesting the appointment of counsel at his arraignment on the unrelated charge is to disregard the ordinary meaning of that request." *State v. Stewart*, 113 Wash. 2d 462, 471, 780 P.2d 844, 849 (1989), cert. denied, 494 U.S. 1020, 110 S. Ct. 1327, 108 L. Ed. 2d 502 (1990).

*McNeil*, 501 U.S. at 177-79. A three-justice dissent in *McNeil* opined that the majority ruling could be easily circumvented because clever counsel would ensure that they or their clients make a statement on the record in the judicial proceeding expressing a desire for the assistance of an attorney in dealing with any custodial interrogation by the police. *Id.* at 184 (Stevens, J., dissenting). In a footnote, the *McNeil* majority disputed that its holding could be thus avoided, stating:

> The dissent predicts that the result in this case will routinely be circumvented when, "[i]n future preliminary hearings, competent counsel . . . make sure that they, or their clients, make a statement on the record" invoking the *Miranda* right to counsel. We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation"-- which a preliminary hearing will not always, or even usually, involve. If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.

*McNeil*, 501 U.S. at 182 n.3 (citations omitted). The *McNeil* majority's statement that "we have in fact never held that a person can invoke his *Miranda* rights anticipatorily in a context other than 'custodial interrogation,'" was reiterated in *Montejo v. Louisiana*, ___ U.S. ___, ___, 129 S. Ct. 2079, 2091 (2009).[3]

---

[3] It is perhaps also worthwhile to note a comment made by the Supreme Court in its very recent decision in *Shatzer*, where the Court held that the *Edwards* preclusion of further interrogation at the initiative of police after the defendant has invoked his Fifth Amendment right to counsel terminates if there has been a two-week break in custody. In reaching this conclusion, the Court stated, "In every case involving *Edwards*, the courts must determine whether the suspect was in custody when he requested counsel and when he later made the statements he seeks to suppress." *Shatzer*, ___ U.S. at ___, 130 S. Ct. at 1223.

The Supreme Court has never directly held that a person *cannot* invoke his *Miranda* rights anticipatorily outside the context of custodial interrogation. However, many lower courts, while generally recognizing that the Supreme Court's statements in *McNeil* and *Montejo* are dicta, have followed those pronouncements and held that an effort to invoke *Miranda* rights outside the context of custodial interrogation will not be effective to restrain police interrogation. *See Burket v. Angelone*, 208 F.3d 172, 197 (4th Cir. 2000) (holding that the defendant's invocation was ineffective "because he was not 'in custody' at the time"); *United States v. Wyatt*, 179 F.3d 532, 537 (7th Cir. 1999) ("The Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody."); *United States v. Bautista*, 145 F.3d 1140, 1149 (10th Cir. 1998) ("If Bautista was not in custody . . . during the questioning, then his attempts to invoke his right to remain silent and his *Miranda* right to counsel were ineffective."); *United States v. Hines*, 963 F.2d 255, 256 (9th Cir. 1992) ("[I]f Hines was not in custody during the first interview, the reference to his lawyer at that time cannot be considered an invocation of *Miranda* rights."); *Marr v. State*, 759 A.2d 327, 340 (Md. Ct. Spec. App. 2000) ("Because appellant's purported invocation, through his attorney, occurred before appellant was in custody, it could not operate to invoke his Fifth Amendment right to counsel."); *State v. Warness*, 893 P.2d 665, 668 (Wash. Ct. App. 1995) ("[T]he Fifth Amendment right to counsel cannot be invoked by a person who is not in custody.").

The rationale given for this bright-line rule varies among the courts, but we think that the Illinois Supreme Court was persuasive when it said:

> It is not surprising that virtually every Supreme Court opinion involving *Miranda* has used the phrase "custodial interrogation." It is custodial interrogation with which *Miranda* was concerned. It is the right to an attorney *during custodial interrogation* that *Miranda* and its progeny protects. That right does not exist outside the context of custodial interrogation. One cannot invoke a right that does not yet exist.

*People v. Villalobos*, 737 N.E.2d 639, 645 (Ill. 2000). We likewise hold that a person may not invoke a Fifth Amendment right to counsel, with the prophylactic effect of cutting off questioning without an attorney present, if the person is not in custody.

## B.     Hurst Was not in Custody

Hurst next argues, in the alternative, that he was in custody at the time he invoked. Custody for *Miranda* purposes, means a formal arrest or restraint on freedom of movement of the

degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322 (1994); *New York v. Quarles*, 467 U.S. 649, 655 (1984). It requires more than a circumstance where a suspect was not free to leave. *Shatzer*, ___ U.S. at ___, 130 S. Ct. at 1224 ("Our cases make clear, however, that the freedom of movement test identifies only a necessary and not a sufficient condition for *Miranda* custody."). The determination of custody does not depend on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury*, 511 U.S. at 323. Instead, the test is an objective one and "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). A court considering whether an individual is in custody should consider the totality of the circumstances surrounding the interrogation. *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). Factors to be considered by the court include the time and location of the interrogation, the conduct of the officer or officers, the nature and manner of the questioning, and the presence of other persons. *State v. Albaugh*, 133 Idaho 587, 591, 990 P.2d 753, 757 (Ct. App. 1999); *State v. Medrano*, 123 Idaho 114, 117-18, 844 P.2d 1364, 1367-68 (Ct. App. 1992). The burden of showing custody rests on the defendant seeking to exclude evidence. *State v. Munoz*, 149 Idaho 121, 129, 233 P.3d 52, 60 (2010); *James*, 148 Idaho at 577, 225 P.3d at 1172.

Hurst contends that the evidence presented at his suppression hearing showed that, at the time he requested counsel, there was restraint on his freedom of movement of the degree associated with a formal arrest. Hurst points out that the detective was wearing a badge and carrying a firearm, and that their conversation took place within sight of a marked police cruiser. However, these factors exist in most citizen/police encounters and, in our view, carry little weight in assessing whether an individual would reasonably believe himself to be in custody.

Hurst also argues that he was in custody because it was clear from the detective's statements that the detective had already investigated Hurst and considered him a suspect regarding the allegations of his stepdaughter. While relevant, this factor is not dispositive. As stated by the *Stansbury* Court:

> An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Cf. *Michigan v. Chesternut*, 486 U.S. 567, 575, n.7, 108 S. Ct. 1975, 1980, n.7, 100 L. Ed. 2d 565 (1988) (citing *United States v. Mendenhall*, 446 U.S. 544, 554, n.6, 100 S. Ct. 1870, 1877, n.6, 64 L. Ed. 2d 497 (1980) (opinion of Stewart, J.)). Those beliefs are relevant only to the extent they would affect how a reasonable person in the

position of the individual being questioned would gauge the breadth of his or her "'freedom of action.'" *Berkemer*, *supra*, 468 U.S., at 440, 104 S. Ct., at 3150. Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case. In sum, an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.

*Stansbury*, 511 U.S. at 325.

Objective review of the circumstances here, aided significantly by the fact that the detective recorded his conversation with Hurst, support the district court's finding that Hurst did not establish a restraint on his freedom of movement of the degree associated with a formal arrest. No officer other than the detective was present during the conversation, and Hurst presented no evidence that the detective touched, handcuffed, or otherwise physically restrained him prior to his formal arrest. The conversation between the two men took place in the lobby of Hurst's place of work, and the voices of Hurst's co-workers can sometimes be heard in the background. The tone of the conversation is relaxed and informal and lasted three and one-half minutes. The detective, several times, expressly "invited" Hurst to come to the sheriff's office to "talk," and stated that he would "appreciate" it if Hurst was "willing" to do so. These factors weigh significantly against a finding of custody. *Compare State v. Frank*, 133 Idaho 364, 369-70, 986 P.2d 1030, 1035-36 (Ct. App. 1999) (defendant who had been placed in handcuffs and restricted to the police vehicle was in custody for *Miranda* purposes). As the district court found, the detective's additional statements that this "isn't something I can push off to the side and let go" and "it's going to have to happen now" referred to his invitation that Hurst come to the police station. The detective said nothing that would lead Hurst to believe he was under arrest prior to formal arrest, nor did he tell Hurst that he could not leave. While the evidence shows that the detective intended to arrest Hurst should he not come to the office voluntarily, the detective did not communicate this intent to Hurst before arresting him. Moreover, the Idaho Supreme Court has held that "the threat of lawful arrest alone does not transform non-custodial questioning into the functional equivalent of arrest, requiring *Miranda* warnings." *James*, 148

9

Idaho at 578, 225 P.3d at 1173. The district court did not err in holding that Hurst failed to show that he was in custody for *Miranda* purposes prior to his formal arrest. Accordingly, Hurst's suppression motion was properly denied.

## C.     Relinquishment of Jurisdiction

The district court sentenced Hurst to a unified thirty-year term of confinement, with five years fixed, but retained jurisdiction. At the subsequent review hearing, the district court declined to place Hurst on probation, instead relinquishing jurisdiction after reducing the fixed portion of the sentence to four years. Hurst contends that because he performed well during retained jurisdiction and obtained a recommendation of probation from corrections officials, and because he accepted responsibility for his crime during sex offender treatment, the district court erred by not placing him on probation.

A district court's decision to relinquish jurisdiction is reviewed by this Court for an abuse of discretion. *State v. Statton*, 136 Idaho 135, 137, 30 P.3d 290, 292 (2001). While a recommendation from corrections officials who supervised the defendant may influence a court's decision, it is purely advisory and is in no way binding upon the court. *State v. Merwin*, 131 Idaho 642, 648, 962 P.2d 1026, 1032 (1998); *State v. Landreth*, 118 Idaho 613, 615, 798 P.2d 458, 460 (Ct. App. 1990). Good performance while on retained jurisdiction, though commendable, does not alone establish an abuse of discretion in the district judge's decision not to grant probation. *Statton*, 136 Idaho at 137, 30 P.3d at 292. The sentencing court may consider all of the circumstances to assess a defendant's ability to succeed in a less structured environment and to determine the course of action that will further the purposes of rehabilitation, protection of society, deterrence, and retribution. *Id.*

Hurst's guilty plea admitted genital-to-genital contact with his seven-year-old stepdaughter. Two other charges of lewd conduct were dismissed as part of the plea agreement. The district court noted Hurst's positive performance during his rider and commended him for his efforts, but concluded that "there are certain types of crime that mandate punishment and mandate deterrence. And this type of situation, the conduct involving this young girl who was seven years old at the time is the type of offense that mandates a period of time in the penitentiary." Hurst has not shown that this conclusion amounted to an abuse of discretion.

10

**D.      Denial of Hurst's Written Request for Reduction of Sentence**

At sentencing, the district court imposed a thirty-year sentence, with five years fixed, but retained jurisdiction.  At Hurst's jurisdictional review hearing, defense counsel orally asked the district court "to consider exercising your abilities under Rule 35" and "consider dramatically cutting down on that fixed time."  The district court did so, reducing the fixed portion of the sentence to four years.  Thereafter Hurst filed a written motion for further reduction of his sentence pursuant to Idaho Criminal Rule 35.  The district court denied the motion, concluding that Hurst had already made an "oral Rule 35 motion at the time of his rider review hearing," that I.C.R. 35 prohibits filing more than one motion for reduction of sentence, and that this preclusion "applies to both written and oral motions."  Hurst asserts error.  He maintains that his oral request for a sentence reduction at the hearing did not count as a motion under the rule.

Hurst's challenge requires examination of the language of I.C.R. 35(b) and (c), which state:

> **(b) Sentences imposed in an illegal manner or reduction of sentence.** The court may correct a sentence that has been imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the filing of a judgment of conviction or within 120 days after the court releases retained jurisdiction. The court may also reduce a sentence upon revocation of probation or upon motion *made* within fourteen (14) days after the filing of the order revoking probation. Motions to correct or modify sentences under this rule must be *filed* within 120 days of the entry of the judgment imposing sentence or order releasing retained jurisdiction and shall be considered and determined by the court without the admission of additional testimony and without oral argument, unless otherwise ordered by the court in its discretion; provided, however that no defendant may *file* more than one motion seeking a reduction of sentence under this Rule.
>
> **(c) Credit for time served prior to sentencing.**  A motion to correct the computation of credit for time served prior to sentencing may be *made* at any time.

(emphasis added).  Hurst appears to assert that his oral request at the hearing could not have been a Rule 35 motion because the rule requires that such motions be "filed," by which he presumably means that for something to be filed with the court it must be in writing.  Under Hurst's reasoning, and contrary to prior authority from this Court, oral Rule 35 motions would not be allowed.  *See State v. Beatey*, 123 Idaho 273, 275, 846 P.2d 924, 926 (Ct. App. 1992) ("There is no requirement in Rule 35 that a motion made at the time of the revocation of probation be in writing.").  He also appears to contend that oral motions for reduction of sentence under the rule

11

are permissible, but not subject to the successive request preclusion because the rule prohibits only the "filing" of more than one motion for reduction of sentence. By this reasoning, a defendant could make as many oral motions for reduction of sentence as he wants without violating the provisions of Rule 35.

Although our appellate courts have never addressed the rule interpretation that is advanced by Hurst, we have consistently held that Idaho Criminal Rule 35 precludes the "filing" of a second motion for reduction of sentence, *see State v. Bottens*, 137 Idaho 730, 732-33, 52 P.3d 875, 877-78 (Ct. App. 2002); *State v. Atwood*, 122 Idaho 199, 200-01, 832 P.2d 1134, 1135-36 (Ct. App. 1992), including the circumstance where an oral motion for reduction of sentence was followed by a written motion. *See State v. Wersland*, 125 Idaho 499, 501, 504-05, 873 P.2d 144, 146, 149-50 (1994); *State v. Heyrend*, 129 Idaho 568, 569, 572, 929 P.2d 744, 745, 748 (Ct. App. 1996).

We note that Rule 35 does not use consistent language in referring to the presentation of a motion for reduction of sentence, sometimes using the word "file" or "filed" and sometimes using "made"; *i.e.*, a motion must be "filed" within 120 days of entry of judgment, but may be "made" within fourteen days after an order revoking probation. If the word "file" is taken literally, it would lead to the incongruous result that only a single written motion could be presented after entry of judgment, but an unlimited number of oral motions could be presented after revocation of probation.

In construing any of the criminal rules, we apply I.C.R. 2(a), which directs: "These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay." *See State v. Loomis*, 146 Idaho 700, 702, 201 P.3d 1277, 1279 (2009). The literal interpretations posited by Hurst would not secure simplicity or fairness in administration, are inconsistent with prior case authority, and would lead to illogical results. We conclude that the two terms "made" and "filed" are used interchangeably in Rule 35 and, therefore, only a single motion for reduction of sentence, whether written or oral, is allowed in all circumstances contemplated by the rule. This interpretation is consistent with the result reached by our Supreme Court in *Wersland*, where the Court held that the defendant was precluded from filing a written motion for reduction of sentence after he had earlier made an oral motion for the same relief. *Wersland*, 125 Idaho at 501, 504-05, 873 P.2d at 146, 149-50.

12

Therefore, the district court correctly denied Hurst's written Rule 35 motion on the ground that it was an impermissible second motion for reduction of Hurst's sentence.

## III.

## CONCLUSION

The district court's orders denying Hurst's suppression motion, relinquishing jurisdiction, and denying Hurst's written motion for reduction of sentence are affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**