# IN THE SUPREME COURT OF THE STATE OF IDAHO

## DOCKET NO. 48305

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | **Boise, November 2021 Term** |
| | ) | |
| v. | ) | **Opinion Filed: January 5, 2022** |
| | ) | |
| VINCENT OTIS BROWN, | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Lansing L. Haynes, District Judge.

The decision of the district court is <u>affirmed</u>.

Eric D. Fredericksen, State Appellant Public Defender, for Appellant. Kimberly Coster argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Ken Jorgensen argued.

_____

BRODY, Justice.

This appeal addresses the one motion limit under Idaho Criminal Rule 35(b) for motions by a defendant to reduce sentence. Brown made two oral requests for reduction of sentence prior to the district court relinquishing jurisdiction and imposing sentence. After sentence was imposed, Brown filed one written motion to reduce sentence pursuant to Rule 35(b). The district court denied the motion, and Brown appeals that denial.

Before reaching the merits of Brown's appeal, we address three prior decisions concerning Rule 35(b). We now disavow our decision in *State v. Wersland*, 125 Idaho 499, 873 P.2d 144 (1994) and abrogate the holding in *State v. Bottens*, 137 Idaho 730, 52 P.3d 875 (Ct. App. 2002)

1

to the extent those cases treated the one motion limit in Rule 35(b) as jurisdictional in effect. We also clarify that the one motion limit in Rule 35(b) is a procedural rule, but we apply this announcement only prospectively. In addition, we abrogate *State v. Hurst*, 151 Idaho 430, 258 P.3d 950 (Ct. App. 2011) where the Court of Appeals interpreted the one motion limit in Rule 35(b) as applying to both written and oral motions for a reduction of sentence at any point after a sentence is announced. Finally, we affirm the district court's decision denying Brown's Rule 35(b) motion to reduce his sentence.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In November of 2012, police in Kootenai County, Idaho, received a report of a stolen pistol. Three months later, the State filed a criminal complaint against Vincent Otis Brown for burglary, felony grand theft of a firearm, and unlawful possession of a firearm by a convicted felon after police discovered he had pawned the same pistol. Following a preliminary hearing, the district court dismissed all counts except for the felony grand theft charge.

Four months after being charged, Brown pleaded guilty pursuant to a plea agreement with the State. The district court accepted Brown's guilty plea and set his sentencing hearing for October of 2013. The district court released Brown on his own recognizance, ordered a presentence investigation, and ordered Brown to return for sentencing. However, Brown did not appear for his presentence investigation interview, and the State filed a bench warrant request before the date of his sentencing hearing. After Brown failed to appear and show cause why the warrant should not issue, the district court granted the bench warrant request and vacated the sentencing hearing. Brown alleged he showed up to the courthouse on the day of his vacated sentencing hearing, but thought he was "good to go" because he did not see his name on the day's docket. Brown then moved to Louisiana to "live his life" without contacting his attorney or the court about his sentencing.

Nearly three years after moving to Louisiana, Brown decided to return for sentencing after a prospective employer ran a background check and informed him that he had an outstanding warrant in Idaho. Brown traveled to Washington and turned himself in to the Spokane Police Department for transfer to Idaho. After his transfer, Brown's presentence investigation was finally completed. The presentence report documented Brown's criminal history as involving violent crimes, theft, and felony convictions across several states: a 1986 felony conviction for breaking and entering in Michigan; a 1986 felony conviction for carrying a concealed weapon in Michigan;

2

a 1988 felony conviction for second degree murder in Michigan (Brown explained that this charge involved him shooting an arrow "into the sky" and it landing on a homeless person who then died); a 2006 felony fugitive charge in Minnesota; a 2010 misdemeanor conviction for petty theft in Idaho; a 2011 misdemeanor assault charge in Washington; a 2012 misdemeanor assault charge in Washington; a 2013 felony charge for grand theft of a firearm in Idaho with sentencing in 2016 (the underlying conviction in this appeal); and a 2013 misdemeanor assault charge in Washington.

On September 16, 2016, about two months after Brown turned himself in for sentencing, District Court Judge Cynthia K.C. Meyer, sentenced Brown to a unified term of six years, with three years fixed and three years indeterminate. The court suspended the sentence and placed Brown on supervised probation for three years. However, as a sanction for absconding to Louisiana, the court ordered six months county jail time, after which Brown's probation would commence. Approximately three months after sentencing, Brown's case was transferred to District Court Judge Lansing L. Haynes.

In 2019, following a report of probation violations, the district court revoked Brown's probation. At the revocation hearing, Brown admitted to the following violations: poor attendance and participation in his substance abuse program; dismissal from the same program; an arrest by Lewiston Police for possession of methamphetamine; failure to attend a scheduled appointment with his probation officer; and three urinalysis tests which were positive for marijuana. At the hearing, the district court asked for defense counsel's "recommendation" as to the case disposition. Brown's counsel recommended a rider or reducing the sentence by commuting it:

> Your Honor, we're asking the Court to consider a rider in this case or alternatively commuting the indeterminate period—excuse me, the determinate period of the sentence to a year and a half, and then adding the remaining year and a half to the indeterminate period of the sentence.

Ruling from the bench, the district court concluded that Brown violated multiple terms of his probation. The district court made the decision to retain jurisdiction and send Brown on a rider.

Approximately eight months into his rider program, Brown was accused of engaging in two violent incidents against other inmates, as well as other non-violent violations. The first violent incident involved Brown striking an inmate with an "easy clamp" cane after that inmate allegedly directed racial slurs at Brown. The second violent incident involved Brown, apparently unprovoked, striking another inmate in the face with his fist.

3

On January 31, 2020, the district court held a jurisdictional review hearing to examine these incidents and decide Brown's case disposition. At the hearing, Brown's defense counsel recommended probation, another rider, or reducing the fixed term of Brown's sentence:

> With respect to our recommendations, your Honor. We're asking the Court to consider probation in this case. He has a place to live. He's completed a substantial amount of his programming . . . . If your Honor feels that probation is inappropriate in this case, we're asking the Court to consider [giving] him another chance at the rider . . . . Finally, Judge, if your Honor feels a rider is not appropriate we're asking the Court to consider reducing the fixed term in this case.

Before rendering its decision, the district court described its concerns with Brown's previous probation violations, his extensive criminal history, and the two violent incidents during the rider program. Ultimately, the district court relinquished jurisdiction and imposed Brown's original sentence of six years, with three years fixed and three years indeterminate.

After sentence was imposed, Brown timely filed a written Rule 35(b) motion requesting a reduction of his sentence. The district court denied Brown's motion, reiterating, among other things, the sentencing factors, the court's concerns from the previous jurisdictional review hearing, and the need to protect society from Brown's inability to control his conduct. Brown timely appealed the district court's denial to this Court.

## II. ANALYSIS

### A. The one motion limit in Rule 35(b) is a procedural limit on the sentencing court.

The State contends the district court erred by entertaining Brown's written motion for a reduced sentence because the one motion limit in Idaho Criminal Rule 35(b) deprives the district court of subject matter jurisdiction whenever the limit is offended. The State's position is based on our opinion in *State v. Wersland*, 125 Idaho 499, 505, 873 P.2d 144, 150 (1994) and the holding of the Court of Appeals in *State v. Bottens*, 137 Idaho 730, 732–33, 52 P.3d 875, 877–78 (Ct. App. 2002). Today we disavow *Wersland* and abrogate *Bottens* to the extent either case held the one motion limit in Rule 35(b) was jurisdictional in effect. Instead, we clarify that the one motion limit in Rule 35(b) is a procedural limit on the district court's authority—not *power*—to entertain successive motions to reduce a defendant's sentence.

"Stare decisis requires that this Court follows controlling precedent unless that precedent is manifestly wrong, has proven over time to be unjust or unwise, or overruling that precedent is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *State v. Owens*, 158 Idaho 1, 4–5, 343 P.3d 30, 33–34 (2015). Issues of subject matter jurisdiction are

4

unwaivable questions of law subject to this Court's free review. *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004). Here, we are concerned not so much with directly overruling controlling precedent as we are with cleaning up the imprecise use of the term "jurisdiction" in *Wersland* and *Bottens*.

Precise use of the term "jurisdiction" refers only to: (1) personal jurisdiction over the parties; or (2) subject matter jurisdiction. *Matter of Hanson*, 121 Idaho 507, 509, 826 P.2d 468, 470 (1992); *State v. Armstrong*, 146 Idaho 372, 375, 195 P.3d 731, 734 (Ct. App. 2008). Nonetheless, courts and parties sometimes imprecisely say a court "lacked jurisdiction" when what is really meant is a court committed an error by taking an action that does not comply with the governing authority. *See Allen v. Campbell*, No. 48452, 2021 WL 5707019, at *3 (Idaho Dec. 2, 2021); *Richardson et al. v. Ruddy,* 15 Idaho 488, 494–95, 98 P. 842, 844–45 (1908); *Armstrong*, 146 Idaho at 375, 195 P.3d at 734 (listing cases where the term "jurisdiction" is loosely used); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510–11 (2006) (confessing that the United States Supreme Court, as well as lower federal courts, have "sometimes been profligate" in the use of "jurisdiction" to characterize matters that are "not properly typed 'jurisdictional.' ").

The Idaho Constitution confers general jurisdiction on Idaho district courts to hear all cases in law and equity. Idaho Const. Article V, § 20; *State v. Rogers*, 140 Idaho 223, 228, 91 P.3d 1127, 1132 (2004). Once a district court acquires subject matter and personal jurisdiction over a criminal defendant, the court's "jurisdiction continues until extinguished by some event." *State v. McIntosh*, 160 Idaho 1, 6, 368 P.3d 621, 626 (2016). Generally, once a defendant is placed into actual physical custody of the Board of Corrections, the district court's jurisdiction is extinguished. *State v. Johnson*, 101 Idaho 581, 585, 618 P.2d 759, 763 (1980); *State v. McGonigal*, 122 Idaho 939, 940, 842 P.2d 275, 276 (1992). However, a "statute or rule" may extend the district court's subject matter jurisdiction beyond an event that otherwise extinguishes it. *State v. Jakoski*, 139 Idaho 352, 355, 79 P.3d 711, 714 (2003). For example, this principle is at work when a district court announces a sentence and enters judgment upon it but either suspends the sentence to grant probation or "retains jurisdiction" to send a defendant on a rider.

To explain, a district court may suspend execution of a judgment and either (1) order probation, I.C. § 19-2601(2); or (2) retain jurisdiction for 365 days while giving custody of the defendant to the Board of Corrections (i.e., grant a rider), I.C. § 19-2601(4). If probation is granted under section 19-2601(2), the district court retains jurisdiction to revoke or modify the terms of

probation. *State v. Fleshman*, 144 Idaho 772, 774, 171 P.3d 263, 265 (Ct. App. 2007) (citing I.C. §§ 20-221, 20-222); *State v. Peterson*, 149 Idaho 808, 811-12, 241 P.3d 981, 984-85 (Ct. App. 2010). "If the trial court revokes probation and executes the imposed sentence, however, jurisdiction then transfers to the Board of Correction." *Fleshman*, 144 Idaho at 774, 171 P.3d at 265. Thus, during a term of probation, a district court is always operating under its jurisdiction provided by Article V, Section 20 of the Idaho Constitution—not the statutes authorizing probation as an alternative case disposition.

Next, if the district court orders a rider under section 19-2601(4), the district court retains jurisdiction of the defendant, which in essence means it shares "concurrent" jurisdiction with the Board. *State v. Urrabazo*, 150 Idaho 158, 163, 244 P.3d 1244, 1249 (2010) (emphasis added) *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 896, 265 P.3d 502, 509 (2011); *Fleshman*, 144 Idaho at 774, 171 P.3d at 265. During a rider, this shared jurisdiction automatically terminates in favor of the Board if the district court does not grant probation within 365 days. *Peterson*, 149 Idaho at 811-12, 241 P.3d at 984-85. In other words, when a rider is granted, section 19-2601(4) *limits* the district court's jurisdiction by placing an outer boundary on it (i.e., the extinguishing event). *Urrabazo*, 150 Idaho at 163, 244 P.3d at 1249 (2010) (emphasis added). Thus, in the case of a rider, the authorizing statute, section 19-2601(4), is not the *source* of the district court's jurisdiction after sentence is announced and suspended— that is the function of Article V, Section 20 of the Idaho Constitution.

These same principles apply when a defendant brings a Rule 35(b) motion to reduce a sentence after it has been imposed and the custody of the defendant has been transferred to the Board. Like the time limit for a rider, the time limit in Rule 35(b) for bringing a motion to reduce sentence in this scenario supplies a *limit* on the district court's jurisdiction. *See* I.C.R. 35; *see generally Jakoski*, 139 Idaho at 355, 79 P.3d at 714. Rule 35(b) does not operate as the *source* of the district court's subject matter jurisdiction to entertain a motion(s) to reduce a sentence after it is imposed, and a defendant is relinquished to the Board's custody. Instead, the district court's power to hear such a motion(s) remains sourced from Article V, Section 20 of the Idaho Constitution.

Once this framework is understood, we can turn to the one motion limit set out in Rule 35(b). The one motion limit in Rule 35(b) is a non-flexible procedural rule. It mandates how and when a defendant's request to reduce sentence must be processed: through *one* motion filed during

6

the applicable window of authority. If this procedural rule is violated, the district court is not automatically deprived of subject matter jurisdiction to hear the violating motion. Ignoring the one motion limit may be an abuse of discretion, but an abuse of discretion under the applicable authority (Rule 35(b)) does not extinguish the district court's power to have made that decision in the first place. *See Boughton v. Price*, 70 Idaho 243, 249, 215 P.2d 286, 289 (1950); *Rogers*, 140 Idaho at 227, 91 P.3d at 1131. Offending the one motion limit is wholly distinct from a scenario where the time limit in Rule 35(b) runs and the district court entertains the motion anyway. *Wersland* and *Bottens* strayed from these principles when they penned the one motion limit in Rule 35(b) as "jurisdictional" in effect.

In *Wersland*, we reached the merits of Wersland's appeal from the district court's denial of her *first* Rule 35(b) motion to reduce sentence and affirmed. 125 Idaho at 504, 873 P.2d at 149. However, we dismissed Wersland's appeal from the denial of her *second* Rule 35(b) motion to reduce sentence without reaching the merits by reasoning that "the district court lacked jurisdiction" to even entertain the second motion. *Id*. at 505, 873 P.2d at 150. Later, in *Bottens*, the Court of Appeals held that "the prohibition of successive motions under Rule 35 is a *jurisdictional* limit" on a sentencing court's power to hear more than one motion to reduce sentence. 137 Idaho at 733, 52 P.3d at 878 (emphasis added). In sum, both *Wersland* and *Bottens* used the term "jurisdiction" imprecisely. Again, the one motion limit in Rule 35(b) is procedural; therefore, its mandate may be forfeited if not objected to by the State. We disavow *Wersland* and abrogate *Bottens* to the extent they hold otherwise.

Typically, our decisions apply both prospectively and retroactively, but this Court can limit the retroactive application of a particular decision in its discretion. *See BHA Inv., Inc. v. City of Boise*, 141 Idaho 168, 173, 108 P.3d 315, 320 (2004); *Thompson v. Hagan*, 96 Idaho 19, 25, 523 P.2d 1365, 1371 (1974). Here, the State did not object below to any of Brown's multiple requests to reduce sentence based on *State v. Hurst*, 151 Idaho 430, 258 P.3d 950 (Ct. App. 2011) (holding that Rule 35(b) one motion limit applies to both oral and written motions). Today we correct the imprecise use of "jurisdiction" in *Wersland* and *Bottens*, but we do not announce a "new rule" of criminal procedure that requires the retroactivity analysis from *Teague v. Lane,* 489 U.S. 288 (1989) as adopted in *Rhoades v. State*, 149 Idaho 130, 133, 233 P.3d 61, 64 (2010). We exercise our discretion and apply our clarification of the one motion limit only prospectively—not to

Brown's case. Thus, despite the State's failure to preserve its objection to the alleged procedural error, we reach the question of whether *Hurst* was correctly decided.

**B. The one motion limit in Rule 35(b) only applies to written motions filed within the appropriate procedural window of the court's authority.**

The Court of Appeals in *State v. Hurst* held the one motion limit in Rule 35(b) applies to both oral and written motions for sentence reduction despite the rule's plain language that "[a] defendant may only *file* one motion seeking a reduction of sentence."151 Idaho 430, 439, 258 P.3d 950, 959 (Ct. App. 2011); *see* I.C.R. 35(b) (emphasis added). Brown argues *Hurst*'s interpretation of Rule 35(b) should be abrogated because, among other things, it does not give the term "file" its plain meaning; its interpretation does not serve the purpose of Rule 35(b)'s one motion limit; and it creates a chilling effect on defense counsel's ability to advise a sentencing court of its legal options at dispositional hearings (e.g., probation revocation and rider review hearings). The State responds by arguing that *Hurst* is consistent with the purpose of the one motion limit: to require a defendant to gather all favorable evidence into *one* motion, oral or written, before asking the court to reduce his or her sentence. We agree with Brown.

"Where the lower court's decision turns on the interpretation of a criminal rule, this Court exercises free review." *State v. Castro*, 145 Idaho 173, 175, 177 P.3d 387, 389 (2008). The standards of construction we apply in interpreting the Idaho Criminal Rules are different from those we apply to statutes enacted by the Idaho legislature. *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017). When we interpret a rule promulgated by this Court, such as Idaho Criminal Rule 35, we are "not constrained by the constitutional separation of powers." *Id*. "[T]he interpretation of a court rule must always begin with the plain, ordinary meaning of the rule's language" but we may temper that meaning by the rule's purpose. *Id*. Unlike statutory construction, "[w]e will not interpret a rule in a way that would produce an absurd result." *Id*. "[I]n keeping with the Idaho Criminal Rules' aim of 'provid[ing] for the just determination of every criminal proceeding[]' we construe the rules 'to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay.' " *Id*. (quoting I.C.R. 2(a)).

Today, we expressly abrogate the interpretation of the one motion limit in Rule 35(b) announced by the Court of Appeals in *Hurst*. We hold that the one motion limit in Rule 35(b) applies only to written motions to reduce sentence filed *after* the sentencing court has entered judgment, revoked probation, or relinquished jurisdiction. Each of these dispositions has a

8

procedural window of authority under Rule 35(b) for a defendant to file his or her one motion to reduce sentence.

A plain reading of Rule 35(b) shows that the rule contemplates limiting motions to reduce sentence only when the rule's procedural windows are open:

> **(b) Sentences Imposed in an Illegal Manner or Reduction of Sentence.** Within 120 days of the entry of judgment imposing sentence or order releasing retained jurisdiction, a motion may be filed to correct a sentence that has been imposed in an illegal manner or to reduce a sentence and the court may correct or reduce the sentence. The court may also reduce a sentence on revocation of probation or on motion made within 14 days after the filing of the order revoking probation. Motions are considered and determined by the court without additional testimony and without oral argument, unless otherwise ordered. A defendant may only file one motion seeking a reduction of sentence.

I.C.R. 35(b).

There are three triggers that open Rule 35(b)'s procedural windows so a defendant may file his or her one motion to reduce sentence. To begin, the first sentence of Rule 35(b) states: "Within 120 days of the entry of judgment imposing sentence or order releasing retained jurisdiction, a motion may be filed to correct a sentence that has been imposed in an illegal manner or to reduce a sentence and the court may correct or reduce the sentence." I.C.R. 35(b). This sentence supplies two windows of authority to grant a defendant relief. First, when the district court enters judgment, the window opens for 120 days. If a Rule 35 motion is not filed during that 120-day period, the window closes but there are additional events which can trigger the opening of another window of authority. The first sentence goes on to provide that when a defendant is on a rider and the district court enters an order relinquishing jurisdiction (i.e., ending the rider without granting probation), the window opens for 120 days.

Next, the second sentence in Rule 35(b) reads: "The court may also reduce a sentence on revocation of probation or on motion made within 14 days after the filing of the order revoking probation." I.C.R. 35(b). This sentence has two parts, and the second part supplies the third trigger. First, it acknowledges the inherent power of the district court to reduce a sentence during the term of probation. Second, it contemplates a motion filed by a defendant *after* the court enters the order revoking probation. In other words, the procedural window here is only open to the defendant for 14 days after entry of an order revoking probation.

Finally, the last sentence reads: "A defendant may only *file* one motion seeking a reduction of sentence." I.C.R. 35(b) (emphasis added). This is the one motion limit at issue in this case. The

9

word "file" here is used as a verb. Its plain meaning is: "[t]o deliver a legal *document* to the court clerk or record custodian for placement into the official record[.]" *File*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). Thus, its plain meaning requires the Rule 35(b) motion be *written*, submitted to, and *filed* with the court. Considered in the context of Rule 35(b)'s three triggers, it is plain that this limit only operates within the three procedural windows discussed above. In other words, the windows to file a Rule 35 motion open *after* the imposition of sentence, or *after* the relinquishment of jurisdiction, or *after* the revocation of probation. To be clear, Rule 35(b) limits a defendant to one written motion to reduce sentence in *total*, i.e., the one motion limit does not reset every time a new procedural window opens.

Treating oral requests to reduce sentence made at *any time* after sentence is announced as motions under Rule 35(b) does not comport with the plain meaning of the rule. For example, Brown made two oral requests for reduction of his sentence. One was at his probation revocation hearing and the other at his rider review hearing. During his probation revocation hearing, no order had been entered to revoke his probation at the time he made his request. In addition, at his rider review hearing (held more than 14 days after Brown's probation was revoked), no order had been entered to relinquish jurisdiction at the time he made his oral request. Thus, neither oral request *could* trigger the one motion limit in Rule 35(b) because each oral request was *before* the applicable procedural window opened—i.e., each request would be a premature Rule 35(b) motion. Once this is understood, *Hurst*'s interpretation of the one motion limit in Rule 35(b) breaks down.

*Hurst* interpreted a version of Rule 35(b) materially the same as the version we now interpret, but *Hurst* went beyond the plain meaning of the rule. Specifically, *Hurst* interpreted the phrase "may only file one motion" as applying to both written *and* oral motions. 151 Idaho at 439, 259 P.3d at 959. *Hurst* misconstrued the plain meaning of the word "file" so it would include oral motions by relying on the rule's purported purpose: to secure "simplicity or fairness in administration[.]" *Id*. The problem with the *Hurst* approach is that it results in a trap for the unwary during disposition hearings. For example, under *Hurst*, defense counsel could unintentionally trigger the limit by merely conversing with the district court about the court's choice between a sentence reduction, probation, or a rider. *Hurst* would treat the mere mention of reducing the sentence as equivalent to a Rule 35(b) motion to reduce sentence. The *Hurst* approach also presents procedural problems for the district court. The clerk's record may not reflect oral requests for leniency made during disposition hearings so judges may unwittingly entertain successive

10

motions. In sum, we decline to affirm *Hurst*'s interpretation of the one motion limit in Rule 35(b) as contrary to the rule's plain meaning. The one motion limit in Rule 35(b) only applies to written filings to reduce sentence made within the rule's appropriate procedural windows.

Here, Brown made two oral requests for a sentence reduction as an alternative case disposition. Neither request was a written motion filed within the 14-day window after revocation of probation or the 120-day window after an order relinquishing jurisdiction. Instead, Brown timely filed one written motion under Rule 35(b) to reduce sentence *after* the district court entered its order relinquishing jurisdiction. Thus, at no point did Brown offend the one motion limit in Rule 35(b). From this, we reach the merits of Brown's appeal.

### C. The district court did not abuse its discretion in denying Brown's Rule 35(b) motion for reduction of sentence.

For felony grand theft of a firearm, the district court sentenced Brown to an underlying six years with three years fixed, and three years indeterminate. On appeal, Brown argues that under any reasonable view of the facts, his sentence was excessive, and the district court abused its discretion in denying his written Rule 35(b) motion to reduce sentence.

The decision on a motion to reduce a sentence pursuant to Rule 35(b) is "vested within the sound discretion of the sentencing court." *State v. Lavy*, 121 Idaho 842, 845, 828 P.2d 871, 874 (1992). "Where an appeal is taken from the denial of a Rule 35 motion, as in this case, we review all information presented at the original sentencing hearing and at a later hearing on the motion." *State v. Mosqueda*, 123 Idaho 858, 860, 853 P.2d 603, 605 (Ct. App. 1993). To establish that the district court abused its discretion in denying a motion to reduce sentence, a defendant must show that in light of the governing criteria, their sentence was excessive under *any* reasonable view of the facts. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). The Court "will not substitute [its] view for that of a sentencing judge where reasonable minds might differ." *Id*.

Here, Brown's sentence is not excessive under any reasonable view of the facts. First, after pleading guilty to the underlying felony grand theft charge and being released on his own recognizance, Brown absconded to Louisiana. Once he missed his sentencing date, Brown did not inform his attorney or the district court about his status. Instead, he chose to leave Idaho without being sentenced. Second, the record shows that Brown has a protracted criminal history, across multiple states, involving violent crimes and theft. Third, once he returned to Idaho, the record shows Brown performed poorly when offered an alternative to prison by the district court, by

repeatedly violating the terms of his probation and performing poorly on his rider due to his inability to control his own behavior.

Finally, the district court reasonably considered the additional information Brown presented along with his Rule 35(b) motion and determined it did not warrant reducing Brown's sentence. The district court's reasoning emphasized that it based its decision to deny Brown's motion on the need to protect society from Brown's inability to control his own behavior. "The paramount goal of sentencing is the 'good order and protection of society.' " *State v. Dobbs*, 166 Idaho 202, 206, 457 P.3d 854, 858 (2020) (quoting *State v. Toohill*, 103 Idaho at 568, 650 P.2d at 710). Thus, Brown did not show that under *any* reasonable view of the facts, the district court's sentence is excessive. In sum, the district court did not abuse its discretion, and we affirm the denial of Brown's Rule 35(b) motion to reduce his sentence.

## III.  CONCLUSION

We disavow *Wersland* and abrogate *Bottens* to the extent they conflict with our holding today that the one motion limit in Rule 35(b) is a procedural limit. This announcement applies only prospectively. In addition, we abrogate the interpretation of Rule 35(b)'s one motion limit in *Hurst*. We clarify that the one motion limit in Rule 35(b) only applies to written motions filed with the court. Finally, we affirm the district court's denial of Brown's Rule 35(b) motion to reduce his sentence.

Chief Justice BEVAN, and Justices STEGNER, MOELLER, and ZAHN, CONCUR.