918 P.2d 595

**K. HEFNER, INC. d/b/a Kurt's Pharmacy, an Idaho Corporation; Darrell Henrichs d/b/a Park–Vu Pharmacy and Pharmacy Shop, Incorporated, an Idaho Corporation, Plaintiffs–Appellants Cross–Respondents,**

v.

**CAREMARK, INC., a California Corporation; John Doe Pharmacies A Through Z, Defendants–Respondents,**

and

**Blue Cross of Idaho Health Services, Inc., Defendant–Respondent Cross–Appellant.**

No. 21906.

Supreme Court of Idaho, Boise, March 1996 Term.

June 19, 1996.

Ellsworth, May, Sudweeks, Stubbs, Ipsen & Perry, Twin Falls, for appellants. Thomas D. Kershaw, Jr. argued.

Elam & Burke, Boise, for respondent Caremark. Lee B. Abrams, Chicago, Illinois, argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent Blue Cross. Patricia M. Olsson argued.

TROUT, Justice.

Respondent Blue Cross of Idaho (BCI) is a large provider of health insurance. This case involves a challenge, under the Idaho Antitrust Law and the Idaho Unfair Sales Act, to a prescription drug reimbursement plan offered by BCI to participating pharmacies. This plan is administered by respondent Caremark pursuant to contract.

## I.

### BACKGROUND

The plaintiffs (referred to collectively as Hefner) are owners and operators of independent pharmacies located throughout the state of Idaho. In early 1993, Caremark contacted them, and other Idaho pharmacies, with a proposal to enter into the reimbursement plan at issue. Under the plan, participating pharmacists are reimbursed for prescriptions filled for BCI subscribers according to rates set by BCI. The "John Doe" defendants are pharmacies who agreed to participate in the BCI reimbursement plan.

Hefner has asserted separate claims against the named and unnamed defendants. With regard to the "John Doe" pharmacies, Hefner alleges that under BCI's reimbursement scheme, these pharmacies are required to sell many prescription drugs "below cost" in violation of the Idaho Unfair Sales Act (I.C. §§ 48–401 to –413). With regard to BCI and Caremark, Hefner alleges a violation of the Idaho Antitrust Law (I.C. §§ 48–101 to –119). According to Hefner's allegations, the BCI plan results in the selling of prescription drugs "below cost" in violation of the Unfair Sales Act (a separate statute), and is thus a "contract, combination . . . , or conspiracy in restraint of trade" prohibited by I.C. § 48–101, part of the Antitrust Law.

## II.

### PROCEDURAL HISTORY

BCI and Caremark filed motions to dismiss pursuant to I.R.C.P. 12(b)(6). On January 27, 1995, the district court granted the motions and dismissed Hefner's claims against BCI and Caremark. However, prior to the dismissal of these claims, Hefner filed a motion to compel a response to an interrogatory requesting the identities of the unnamed pharmacies. The district court did not rule on this motion before granting the named defendants' motion to dismiss. Hefner appeals from the district court's order granting the motion to dismiss, and its award of attorney fees to BCI under I.C. § 12–120(3).

Prior to the decision on the named defendants' motion to dismiss, two plaintiffs (Jack's Pharmacy and Osburn Drug) sought to withdraw from the action pursuant to I.R.C.P. 41(a)(2). BCI cross-appeals from the district court's refusal to dismiss these plaintiffs with prejudice (the court dismissed them without prejudice), and the court's refusal to award attorney fees and costs against these plaintiffs.

## III.

### DISMISSAL OF CLAIMS AGAINST UNNAMED PHARMACIES

■ Hefner contends that the district court erred in dismissing its claims against

the "John Doe" pharmacies at a time when discovery motions were pending and no motion to dismiss had been asserted with regard to these claims. We will not review alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error. *E.g., De Los Santos v. J.R. Simplot Co.*, 126 Idaho 963, 969, 895 P.2d 564, 570 (1995). Although its order provides a background discussion of all of Hefner's claims, including those asserted against the unnamed pharmacies, the district court confined its analysis and its rulings exclusively to those claims against BCI and Caremark which were challenged by the named defendants' motion to dismiss.

Having concluded that the district court did not dismiss the claims against the unnamed pharmacies it would, at first blush, appear that there is no final order within the meaning of I.A.R. 11(a)(1). *See, e.g., Nelson v. Whitesides*, 103 Idaho 374, 647 P.2d 1246 (1982) (final judgment or decree to which Rule 11(a)(1) refers is one which finally determines the rights of the parties). Since the record contains no certificate of final judgment entered pursuant to I.R.C.P. 54(b), the question becomes whether this appeal is properly before this Court. For the following reason, we conclude that it is.

▮▮▮ To designate an unknown entity as an adverse party to a lawsuit, I.R.C.P. 10(a)(4) requires that the pleading identify the entity as one "whose true name is unknown." Hefner's complaint does not designate the "John Doe" pharmacies as entities whose true names are unknown, but simply states that they are "pharmacies operating within the State of Idaho who have entered into a contract with the other defendants." Thus, although the unknown pharmacies are named entities for purposes of the factual allegations in the complaint, they are not actual parties to this lawsuit. *Cf. Watts v. Lynn*, 125 Idaho 341, 348, 870 P.2d 1300, 1307 (1994) (an amended complaint stating true name of fictitious party does not relate back unless the original pleading satisfies Rule 10(a)(4)). Accordingly, the fact that the

district court's order did not resolve Hefner's "claims" against these non-parties is of no consequence to this appeal, and we will proceed to consider the remaining issues presented.

## IV.

## WHETHER THE DISTRICT COURT ERRED IN DISMISSING HEFNER'S ANTITRUST CLAIMS AGAINST BCI AND CAREMARK

With regard to the named defendants, Hefner appeals from that portion of the district court's order dismissing its antitrust claims. The district court granted the defendants' motion to dismiss pursuant to I.R.C.P. 12(b)(6) for failure to state a claim upon which relief may be granted. When reviewing such a ruling, the question is whether "it appears beyond doubt that the appellant could prove no set of facts in support of his claim which would entitle him to relief." *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995) (citations omitted). In light of the procedural stance of this case, our concern on appeal is not the substantive merits of Hefner's position. Rather, we must look to the face of the complaint to determine whether a cause of action has been alleged.

▮▮▮ Hefner alleges that BCI and Caremark have violated I.C. § 48–101, which provides in relevant part: "[e]very contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce, within this state, is hereby declared to be illegal." This provision is patterned after § 1 of the federal Sherman Act (15 U.S.C. §§ 1 to 7),[1] and enumerates only two elements for a cause of action: (1) a contract, combination, or conspiracy (2) in restraint of trade. Hefner alleges that because the BCI reimbursement scheme requires competing pharmacies to sell products "below cost" in violation of the Unfair Sales

---

1. Although not binding on this Court in interpreting the Idaho Antitrust Law, federal court decisions interpreting the Sherman Act are considered persuasive. *E.g., Afton Energy, Inc. v. Idaho Power Co.*, 122 Idaho 333, 340, 834 P.2d 850, 857 (1992).

Act, it is a "contract ... in restraint of trade" under I.C. § 48–101.

## A. Restraint of Trade

■■■ The district court focused exclusively upon the second element of Hefner's § 48–101 claim. With regard to the corresponding element in § 1 of the Sherman Act, federal courts have developed a two-tiered analysis for determining whether there is a "restraint of trade." Activity is *per se* illegal under the Sherman Act if it is "manifestly anticompetitive" and lacks redeeming virtue. *Royal Drug Co. v. Group Life & Health Ins. Co.*, 737 F.2d 1433, 1436 (5th Cir.1984) (citing *Northern Pacific Ry. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.* 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979)). Activity that is not obviously anticompetitive is analyzed under the "rule of reason," whereby the factfinder inquires into the unreasonableness of the restraint in light of all the circumstances of the case. *See Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977).

In addressing Hefner's antitrust claim, the district court first concluded that there is no allegation that Caremark or BCI are competing with the plaintiffs, nor is there any allegation that they are wholesalers, retailers, or direct sellers within the meaning of the Unfair Sales Act. Thus, the reimbursement agreements do not constitute a *per se* illegal horizontal combination. Moreover, because the agreements do not attempt to fix prices to be charged in transactions with third parties, there is no *per se* illegal vertical combination. Under its "rule of reason" analysis, the district court identified as the fatal flaw in Hefner's amended complaint the fact that there is no allegation that Caremark or BCI are wholesalers or retailers within the meaning of the Unfair Sales Act, or that they are in competition with the plaintiffs in the pharmacy business. Consequently, it concluded that Hefner failed to state a claim with respect to count 2 of its amended complaint.

### 1. *Per se* analysis

■■■ Hefner concedes that this case does not involve horizontal price fixing. For a contract involving vertical restrictions to fall within the scope of the *per se* prohibition of § 1 of the Sherman Act, there must be an agreement to fix prices charged not only in transactions between the contracting parties, but in transactions with unrelated third parties as well. *Sausalito Pharmacy, Inc. v. Blue Shield of California*, 544 F.Supp. 230, 234 (N.D.Cal.1981) (quoting *Sitkin Smelting & Refining Co. v. F.M.C.*, 575 F.2d 440 (3d Cir.1978)).[2] Hefner acknowledges the fact that the agreement at issue in the present case does not purport to fix prices charged to unrelated third parties, and involves only the price charged by participating pharmacies to BCI. However, it contends that I.C. § 48–403 (defining "cost" for purposes of the Unfair Sales Act) sets the price below which a pricing scheme cannot fall under the Idaho Antitrust Law, even if that scheme affects only the contracting parties and not unrelated third parties.

■■■ Under Hefner's reasoning, any favorable agreement obtained by a buyer of goods or services which results in sales "below cost" within the meaning of the Unfair Sales Act, would result in automatic liability under the Antitrust Law, a separate statute. We decline this invitation to, in effect, create a new category of *per se* illegal contracts. Had the legislature intended to provide such a powerful private enforcement tool under the aegis of an "antitrust claim," it would have specifically provided one in the Antitrust Law itself. Accordingly, we adopt the requirement identified in *Sausalito Pharmacy* and hold that since there are no allegations in Hefner's complaint that the BCI reimbursement scheme sets the price to be charged in transactions with unrelated third parties, Hefner has not alleged facts sufficient to state a *per se* antitrust violation under I.C. § 48–101. Thus, as with most contracts having allegedly anticompetitive effects, the BCI reimbursement scheme must be analyzed under a rule of reason analysis. *See Continental T.V.*, 433 U.S. at 57–59, 97

**2.** The district court decision in *Sausalito Pharmacy* was adopted *in toto* by the Ninth Circuit in

*Sausalito Pharmacy v. Blue Shield of California,* 677 F.2d 47 (9th Cir.1982).

S.Ct. at 2561–62.[3]

### 2. Rule of reason analysis

As stated above, the "rule of reason" analysis inquires into the "reasonableness" of a given restraint, *ie.* the extent and impact of any resulting anticompetitive effects. Although the district court focused exclusively on the "restraint of trade" element of Hefner's claim, it did not embark upon a true "rule of reason" analysis. That court based this portion of its decision on the fact that "there is no allegation [in Hefner's complaint] that either Caremark or Blue Cross are wholesalers or retailers within the meaning of the Unfair Sales Act." However, Hefner does not allege that BCI and Caremark have themselves violated the Unfair Sales Act. Rather, it contends that BCI's reimbursement plan, which requires *others* to violate the Unfair Sales Act, is a contract "in restraint of trade." Consequently, the absence of an allegation that BCI and Caremark violated the Unfair Sales Act is not fatal to the antitrust claim, as such an allegation would actually have nothing to do with the claim.

The cases relied upon by the district court reveal that it may be difficult for Hefner to actually prove a violation of I.C. § 48–101. In *Royal Drug*, for example, the plaintiffs supported their rule of reason claim by contending that the challenged agreement eliminated competition, and that the defendants conspired to drive smaller pharmacies out of business. 737 F.2d at 1439. The court concluded that even if the plaintiffs' complaint could be construed to allege such anticompetitive effects, their case failed under a rule of reason analysis because they presented no evidence going beyond "unsupported conjecture" in support of their theories. *Id. See also Sausalito Pharmacy*, 544 F.Supp. 230 (summary judgment granted because evidence was uncontroverted that the challenged agreements "were not entered into with intent to control market prices, impose undue limitations on competitive conditions,

or unreasonably restrict competitive opportunity.").

■ It is true that Hefner has, as the plaintiffs in the cited cases, presented no evidence supporting its claims. However, it *alleges* that the BCI reimbursement scheme "will have the effect of restraining trade, reducing competition in the pharmacy trade and unfairly diverting trade from the plaintiffs and other pharmacists who do not enter into this arrangement." At this stage, the allegations in Hefner's complaint must be accepted as true, and the cited cases are clearly distinguishable in that they were resolved on motions for summary judgment. Based upon our review of its complaint, we hold as a matter of law that Hefner has alleged an unreasonable "restraint of trade."

### B. Contract, Combination, or Conspiracy

Apparently because it concluded that Hefner failed to allege a "restraint of trade," the district court did not address whether it alleged what is logically the first element of its antitrust claim: a "contract, combination, or conspiracy." Because we have determined that Hefner has alleged a "restraint of trade," we will address this issue to provide guidance to the district court on remand.

■ Federal courts use the terms "contract, combination, or conspiracy" interchangeably to describe the requisite agreement between two or more actors. *See generally* Irving Scher, Antitrust Advisor §§ 1.05, 1.06 (4th ed.1995). In interpreting this requirement in § 1 of the Sherman Act, the United States Supreme Court has held that § 1 does not proscribe independent action by a single entity, regardless of its effect on competition. Rather, it is concerted action by two or more parties that is prohibited. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771, 104 S.Ct. 2731, 2742, 81 L.Ed.2d 628 (1984) ("A § 1 agreement may be found when 'the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.' ")

---

**3.** We do not mean to imply that resulting violations of the Unfair Sales Act are not relevant to the reasonableness question. However, while sales "below cost" may be indicative of tactics ultimately harmful to competition, such sales do not, of themselves, establish an unreasonable restraint of trade.

(quoting *American Tobacco Co. v. United States*, 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946)). Thus, the federal courts have placed a "gloss" on the contract element requiring also that there be a "unity of purpose" between the contracting parties to violate the antitrust laws. We conclude that this element is also a requirement of I.C. § 48–101.

■ After describing the terms of the BCI reimbursement plan in its complaint, Hefner makes the following allegation:

> Defendants Pharmacies A through Z, together with other pharmacies, have entered into such an agreement with defendants Blue Cross and Caremark. These defendants have entered into such a contract and combination with the specific intent to monopolize the prescription pharmacy business and restrain the ability of the plaintiffs and other locally and independently owned pharmacies to engage in this trade.

Accordingly, we conclude that Hefner has alleged the requisite agreement, including the necessary element of mutual intent to violate the Antitrust Law. Because it has also alleged an unreasonable restraint of trade, we are compelled to hold that it has stated a cause of action under I.C. § 48–101, and the decision of the district court granting the motion to dismiss is reversed.

## V.

### WHETHER THE DISTRICT COURT ERRED IN AWARDING ATTORNEY FEES PURSUANT TO I.C. § 12–120(3)

The district court granted attorney fees to BCI under I.C. § 12–120(3). On appeal, Hefner contends that I.C. § 48–114, being more specific than § 12–120(3), is the appropriate statute to apply in antitrust cases. According to Hefner, since § 48–114 does not provide for an award of attorney fees to antitrust defendants, the award of fees to BCI below was erroneous. Alternatively, Hefner contends that even if § 12–120(3) does apply, BCI was not entitled to an award of fees under that statute.

■ Because we have concluded that BCI should not have prevailed below, we set aside the district court's award of attorney fees. For guidance to that court on remand, we will also address the question of which statute is applicable in this case. Where two statutes appear to apply to the same case, the specific should control over the general. *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 126 Idaho 145, 149, 879 P.2d 1078, 1082 (1994). Because § 48–114 specifically addresses the subject of attorney fees in cases brought under the Antitrust Law, it is more specific than I.C. § 12–120(3), and is controlling in this case. Therefore, § 48–114 should be applied by the district court on remand.

## VI.

### WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING JACK'S PHARMACY AND OSBURN DRUG

BCI has cross-appealed from the district court's order granting a motion, under I.R.C.P. 41(a)(2), by plaintiffs Jack's Pharmacy and Osburn Drug to withdraw from the action. The district court dismissed these parties from the action without prejudice, and refused to assess an award of costs and attorney fees against them. On appeal, BCI contends that the district court should have assessed costs and attorney fees against these plaintiffs, and that it erred in not dismissing them with prejudice.

■ Trial courts are vested with discretion in determining the terms and conditions for dismissal under I.R.C.P. 41(a)(2). *Jones v. Berezay*, 120 Idaho 332, 815 P.2d 1072 (1991). In determining whether a trial court abused its discretion, we ask: (1) whether that court correctly perceived the issue as one of discretion; (2) whether it acted within the outer boundaries of that discretion and consistently with any applicable legal standards; and (3) whether it reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (quoting *Associates Northwest, Inc. v. Beets*, 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987)).

In this case, the district court clearly recognized this issue as one of discretion. It reasoned that BCI likely did not incur any additional expense as a result of the fact that these two parties were named as plaintiffs, and that it was therefore unnecessary to assess an award of costs or fees against them to reimburse the defendants. It also reasoned that dismissing the plaintiffs without any adverse consequences would be beneficial in that it would tend to encourage parties who do not "have the stomach" for litigation to seek a dismissal. Consequently, we hold that the district court did not abuse its discretion.

## VII.

### CONCLUSION

The district court's order dismissing Hefner's antitrust claims against BCI and Caremark is reversed, and its award of attorney fees to BCI set aside. The order dismissing Jack's Pharmacy and Osburn Drug from the action without prejudice is affirmed. Costs but not attorney fees are awarded to Hefner on appeal. Because BCI is not the prevailing party on appeal, we will not consider its request for attorney fees on appeal.

McDEVITT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.