# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 52616-2025

ELIZABETH MILLER, )
)
    Petitioner-Respondent, )       Boise, January 2026 Term
)
v. )       Opinion Filed: March 24, 2026
)
MARK MILLER, )       Melanie Gagnepain, Clerk
)
    Respondent-Appellant, )
_____ )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Gerald F. Schroeder, Senior District Judge. Matthew Haynes, Magistrate Judge.

The decision of the district court is <u>affirmed</u>. The case is <u>remanded</u> to the district court with instructions to remand to the magistrate court to consider an award of attorney fees.

Stoel Rives LLP, Boise, and Law Office of Jeffrey T. Sheehan, PLLC, Boise, for Appellant. W. Christopher Pooser argued.

Cosho Humphrey LLP, Boise, for Respondent. Mackenzie Whatcott argued.

_____

BEVAN, Chief Justice.

This case concerns the arbitrability of a divorce action. Elizabeth Miller filed for divorce in June 2021. During the divorce proceedings, her husband, Doctor Mark Miller, agreed to submit the matter to arbitration if Elizabeth would waive her spousal support claims. She did and the issue went to arbitration. After conducting the arbitration, the arbitrator elected to divide the community assets unequally, awarding 60% of the marital assets to Elizabeth and 40% to Mark. The arbitrator also determined that Mark owed Elizabeth retroactive child support. After the arbitrator issued the award, Mark unsuccessfully challenged the award's validity in the magistrate court. Mark then appealed to the district court, but the district court also ruled against Mark and awarded partial attorney fees to Elizabeth for the appeal.

Mark now appeals the district court's ruling. Specifically, Mark contends that, notwithstanding his agreement to arbitrate, divorce matters cannot be submitted to arbitration

1

because the magistrate and district courts have "[e]xclusive original jurisdiction" of those matters under Idaho Code section 32-715. He also argues that the arbitrator improperly awarded (1) retroactive child support, and (2) an unequal distribution of assets in lieu of spousal support because those issues were not submitted to arbitration. Mark further contends that Elizabeth should not have been awarded attorney fees for his appeal to the district court. Both Mark and Elizabeth seek attorney fees on appeal to this Court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Mark and Elizabeth Miller were married in 1994. During the course of their marriage, Mark established a successful ophthalmologist practice, and Elizabeth primarily stayed home to care for their eight children. In June of 2021, Elizabeth filed a Petition for Divorce. In her petition, Elizabeth sought child support, spousal maintenance, an equitable division of community property and debts, attorney fees, and child custody as to be mutually agreed by the parties. Mark responded, filing an answer and counterclaim. He sought joint legal and physical custody of their minor children. Mark also sought an equitable division of community income and property, but he requested that the parties pay their own attorney fees and costs.

The parties then filed conflicting motions for temporary orders. Most of the issues discussed in these motions have no bearing on this appeal, except for one. Elizabeth moved "[f]or an order requiring [Mark] to pay support . . . ." Mark offered to split his biweekly paycheck with Elizabeth, as well as the balance of a business savings account that contained $250,000. The magistrate court judge presiding over the case at the time described Mark's offer as "such a good-faith overture that it shows me higher-functioning thinking with regard to what to do temporarily." Elizabeth accepted Mark's proposal. Because the parties agreed on this point, both the magistrate court and Elizabeth's counsel agreed that there was no need to calculate child support at that time. The court then entered a Temporary Order which implemented Mark's proposal, "so that [the parties] can pay for their reasonable living expenses and separate legal fees."

It took about eighteen months before the parties would finally come to an agreement on custody. The magistrate court judge assigned to the case at that time entered a partial judgment implementing that agreement and retired shortly thereafter. After resolving custody, Elizabeth's counsel proposed resolving the remaining issues through binding arbitration, something Elizabeth's counsel had done in other divorce proceedings. Mark was hesitant to accept arbitration,

2

but he agreed to stipulate to arbitration if Elizabeth agreed to waive her claim to spousal support, which she did.

The parties then signed an arbitration agreement. The new magistrate court judge assigned to the case entered an order giving effect to that stipulation. After the parties' original arbitrator withdrew, Elizabeth and Mark found another mutually acceptable arbitrator and signed a second arbitration agreement. This second agreement was virtually identical to the first agreement. Like its predecessor, the second agreement referred the case and all "pending claims" to arbitration. The agreement also provided additional terms that were to govern the arbitration:

1.  GOVERNING LAW. Idaho law and Uniform Arbitration Act (Idaho Code § 7-901-et seq) shall govern in this matter

2.  EXPLANATION OF AWARD. The Arbitrator shall provide a written explanation of the award.

3.  PAYMENT OF ARBITRATOR. The parties agree that the Arbitrator shall be paid her hourly rate and the cost shall be equally shared between the parties as determined by the Arbitrator.

4.  SPOUSAL MAINTENANCE. The Petitioner agrees that she waives any claim to spousal maintenance.

5.  BEFORE THE ARBITRATOR. The issues before the Arbitrator include the income amounts to be used for child support, setting child support amount, valuation, characterization and allocation of the property and debts in this divorce action.

6.  BINDING. The Arbitrator's decision shall be binding and final. No appeals, other than jurisdiction or fraud, shall be permitted. The award shall be confirmed by this [c]ourt.

The magistrate court then entered another order reflecting this new agreement, and the parties proceeded to three days of arbitration. At the conclusion of the arbitration, the arbitrator issued a written award.

The arbitrator determined that an unequal distribution of the community property was appropriate and granted 60% of the community's assets to Elizabeth. In support of this conclusion, the arbitrator noted the long duration of the marriage, Elizabeth's advanced age, Mark's high income and extensive assets, Elizabeth's lack of work history, the age and number of children still living at home, Elizabeth's lack of employment options, and Elizabeth's consistent role as a homemaker. The arbitrator also determined that an unequal distribution was appropriate based on the disparate Social Security benefits between the parties.

3

The arbitrator then set the amount of child support that Elizabeth would receive. Using the child support guidelines found in the Idaho Rules of Family Law Procedure, the arbitrator awarded Elizabeth child support for the children still living at home. Importantly, the arbitrator determined that the child support should be paid retroactively from the date the divorce action commenced. The arbitrator also determined that Mark was responsible for paying the extracurricular expenses of the children, including some of the expenses of the adult children. The arbitrator concluded the award by requiring Mark to pay all of Elizabeth's remaining attorney fees and costs.

Mark moved to alter and amend the award, arguing (among other things) that the arbitrator had erred by awarding retroactive child support and expenses, post-majority expenses, unequal distribution, and attorney fees and costs to Elizabeth. Elizabeth stipulated to remove the reference of post-majority expenses, since it was against Idaho law to grant post-majority maintenance. *See Stanger v. Stanger*, 98 Idaho 725, 729, 571 P.2d 1126, 1130 (1977) (holding the same). This led the arbitrator to amend the award to remove "any reference to post-majority awards," but the arbitrator otherwise denied all of Mark's other requests.

With the arbitration fully concluded, the parties returned to the magistrate court. In October 2023, Elizabeth moved to confirm the arbitration award. Mark moved to modify or vacate the arbitration award.

In his memorandum in support of his motion, Mark reiterated many of the same arguments he had made to the arbitrator when he filed the motion to modify the arbitration award. In addition, Mark argued that the magistrate court lacked jurisdiction to "refer family law matters to binding arbitration, and ha[d] violated its constitutional and statutory authority in so doing." (Emphasis omitted). Mark also argued that the award should be vacated because the arbitration agreement was too ambiguous to enforce. And he argued that the award exceeded the arbitrator's authority by deciding issues not submitted for arbitration—namely by granting (1) retroactive child support, (2) attorney fees, and (3) an unequal distribution in lieu of spousal support. Two days after Mark submitted his memorandum, another magistrate court judge was assigned to the case.

That judge denied Mark's motion, finding that the court had jurisdiction to refer the Millers' divorce action to arbitration, based in part on the language found in two sections of the Uniform Arbitration Act (UAA): Idaho Code sections 7-901 and -917. The magistrate court also relied on an Idaho Court of Appeals case, *Hughes v. Hughes*, 123 Idaho 711, 851 P.2d 1007 (Ct. App. 1993), to determine that parties may elect to resolve their divorce matters in arbitration. The

4

magistrate court similarly disposed of Mark's other arguments to vacate or modify the arbitration agreement. The court concluded that the arbitration agreement was unambiguous, the arbitration award did not exceed the arbitrator's authority, and there was no basis for modifying the award. The magistrate court then granted Elizabeth attorney fees related to Mark's motion.

After denying Mark's motion to vacate or modify the arbitration award, the magistrate court entered an order confirming the award in February 2024. Then, in April, the magistrate court entered a partial judgment, implementing the arbitration award pursuant to Idaho Code section 7-914. The magistrate court also entered three orders awarding attorney fees and costs to Elizabeth for three different time periods. The first period related to fees and costs submitted by Elizabeth in a memorandum filed in September 2023. The second period related to fees and costs submitted by Elizabeth in a memorandum filed in October of the same year. And the third period related to fees and costs submitted by Elizabeth in a memorandum filed in January 2024.

Mark appealed to the district court, challenging the magistrate court's order confirming the arbitration award and the magistrate court's partial judgment. Mark raised five arguments in his appeal to the district court: first, that the arbitration award had to be vacated because the magistrate court was statutorily precluded from referring divorce actions to arbitration; second, that the arbitration award exceeded the arbitrator's authority by granting (1) retroactive child support, (2) attorney fees, and (3) unequal distribution in lieu of spousal support; third, that the magistrate court "impermissibly modified" the arbitration award by allowing Elizabeth to claim their children as dependents for tax purposes; fourth, that the magistrate court erred by awarding Elizabeth attorney fees based on the arbitration award; and fifth, that Mark was entitled to attorney fees and costs on appeal. Elizabeth defended both the arbitrator's and the magistrate court's decisions, and she asked for attorney fees and costs on appeal.

The district court agreed with Elizabeth on all but one issue. Like the magistrate court, the district court relied on Idaho Code sections 7-901 and -917 to conclude that the magistrate court could refer the Millers' divorce to arbitration. The district court further cited *Hughes v. Hughes* in support of this conclusion. The district court also ruled that the arbitration award was within the arbitrator's authority when it awarded retroactive child support and unequal distribution. However, the district court concluded that the award of attorney fees against Mark was improper. The district court then vacated two of the three orders awarding Elizabeth attorney fees because those judgments were based on the arbitration award. The district court affirmed one of the judgments

5

awarding attorney fees because that judgment was based on decisions made by the magistrate court, not the decisions made by the arbitrator.

The district court concluded its opinion by awarding Elizabeth partial attorney fees on appeal under Idaho code section 12-121. While Mark partially prevailed on the attorney fee issue, the district court determined that Mark had pursued his jurisdictional challenge unreasonably and without foundation. Accordingly, the district court awarded Elizabeth attorney fees and costs for defending that portion of the magistrate court's decision. Mark then timely filed this appeal.

## II.  ISSUES ON APPEAL

1.  Whether the district court erred when it determined the magistrate court had jurisdiction to enforce the parties' arbitration award under the Uniform Arbitration Act.
2.  Whether the district court erred when it affirmed the magistrate court's decision that the arbitration award did not exceed the arbitrator's authority.
3.  Whether the district court erred in awarding Elizabeth attorney fees on appeal.
4.  Whether either party is entitled to attorney fees on appeal to this Court.

## III.  STANDARDS OF REVIEW

"In reviewing the decision of a district court acting in its appellate capacity, the standard of review requires that we review the district court's decision to determine whether its decision is supported by the findings of fact and legal conclusions of the magistrate court . . . ." *Med. Recovery Servs., LLC v. Melanese*, 175 Idaho 81, ___, 562 P.3d 182, 187 (2024) (quoting *Farms, LLC v. Isom*, 169 Idaho 188, 190, 493 P.3d 947, 949 (2021)). If the district court has affirmed a magistrate court's decision, and if that decision is legally sound, then this Court will affirm the district court's decision as "a matter of procedure." *Id.* at ___, 562 P.3d at 188 (quoting *Farms*, 169 Idaho at 190, 493 P.3d at 949). This Court does not affirm or reverse the magistrate court's decision directly, "but is procedurally bound to affirm or reverse the decisions of the district court." *Id.* (citation modified).

"Whether the magistrate court had subject matter jurisdiction is a question of law over which this Court exercises free review." *Idaho Dep't of Health & Welfare v. Doe (2021-24)*, 169 Idaho 328, 334, 495 P.3d 1016, 1022 (2021) (citation modified). Additionally, "[a]rbitrability is a question of law to be decided by the court." *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 315, 246 P.3d 961, 968 (2010) (quoting *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 200, 177 P.3d 944, 947 (2007)). "Determining the scope of an arbitration clause is a question of contractual interpretation." *Id.* However, "[j]udicial review of an arbitrator's decisions is limited

6

to an examination of the award to determine whether any of the grounds for relief stated in Idaho Code §§ 7–912 and 7–913 exists." *Am. Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 398, 94 P.3d 699, 703 (2004) (citations omitted). Even if a reviewing court were to conclude that an arbitrator's rulings were erroneous, those rulings are "nevertheless binding unless one of the grounds for relief set forth in I.C. §§ 7–912 or 7–913 are present." *Pac. Alaska Seafoods, Inc. v. Vic Hoskins Trucking, Inc.*, 139 Idaho 472, 474, 80 P.3d 1073, 1075 (2003) (citation omitted).

"The awarding of attorney fees and costs is within the discretion of the district court and is subject to the abuse of discretion standard of review." *Breckenridge Prop. Fund 2016, LLC v. Wally Enters., Inc.*, 170 Idaho 649, 662, 516 P.3d 73, 86 (2022) (citation omitted).

> When this Court considers whether the district court abused its discretion, it applies a four-part test: (1) whether the court correctly perceived the issue as discretionary; (2) whether the court acted within the outer boundaries of its discretion; (3) whether the court acted consistently with the legal standards applicable to the specific choices available; and (4) whether the district court reached its decision by an exercise of reason.

*Id.* (citing *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## IV.    ANALYSIS

### A.    The district court did not err in determining that the magistrate court had authority to refer the parties' divorce action to binding arbitration.

On appeal, Mark argues that courts may not refer divorce actions to binding arbitration—even if the parties agreed to arbitrate their dispute. Mark advances two different arguments in support of this assertion: one grounded in statutory interpretation and the other in caselaw. First, Mark argues that district courts (including the magistrate division) cannot refer divorce actions to arbitration because those courts have "[e]xclusive original jurisdiction" of such actions and proceedings under Idaho Code section 32-715. Second, Mark argues that parties are prohibited from entering into agreements that divest the court of its jurisdiction in certain divorce matters, a position Mark derives from this Court's opinion in *Phillips v. Phillips*, 93 Idaho 384, 387, 462 P.2d 49, 52 (1969). He also argues that *Hughes v. Hughes*, 123 Idaho 711, 851 P.2d 1007 (Ct. App. 1993), is inapposite because, in that case, the Court of Appeals did not specifically consider whether courts had jurisdiction to refer divorce actions to arbitration.

We disagree and hold that Idaho Code sections 7-901 and 7-917 plainly grant courts the authority to refer "*any* existing controversy"—including divorce actions—to arbitration. *See* I.C. § 7-901 (emphasis added). Nor do we read Idaho Code section 32-715, which grants district courts

7

"[e]xclusive original jurisdiction," as placing any kind of restraint on the courts' general authority to refer divorce matters to arbitration. To the contrary, Idaho's statutory scheme supports the conclusion that parties may utilize alternative dispute resolution to resolve issues arising in divorce matters. We also reject Mark's assertion that this Court's opinion in *Phillips* compels a different result. Finally, we note that the Court of Appeals in *Hughes* implicitly addressed the arbitrability of divorce actions, and we find its reasoning is persuasive.

       1. *Statutory Interpretation*

Mark's statutory analysis centers on the language found in Idaho Code section 32-715. This section states, in relevant part, that "[e]xclusive original jurisdiction of all actions and proceedings under this chapter is in the district court, but a judge thereof at chambers may make all necessary orders to carry out the provisions of this chapter." I.C. § 32-715. According to Mark, this grant of "[e]xclusive original jurisdiction" means that the power to adjudicate a divorce action is "vested in the court alone and in no other forum."

Mark reaches this conclusion by relying on dictionary definitions, Idaho statutes, and court rules. He points, for example, to Black's Law Dictionary's definition of "exclusive jurisdiction," as "[a] court's power to adjudicate an action . . . to the exclusion of all other courts." *See JURISDICTION, Black's Law Dictionary*, (12th ed. 2024). From this, Mark reasons that because the magistrate court's jurisdiction is exclusive, it was error to allow an arbitrator to decide those issues. In his view, referring the parties' divorce matter to arbitration divested the magistrate court of its exclusive original jurisdiction.

Mark also cites a number of other divorce statutes and court rules in support of his construction of section 32-715. These statutes and rules include Idaho Code sections 32-705(1), -706(1), -712(1), -717(1), and Idaho Rules of Family Law Procedure 601, 602, 603, 604, 1002(c), 1004(i), 1005(g), and 1006(g)(2). These statutes and rules generally establish the type of actions that courts or mediators may take in divorce proceedings. *See, e.g.*, I.C. § 32-706(1) (allowing courts to order child support); I.R.F.L.P. Rule 602 (permitting mediation of child custody and visitation disputes). Mark notes that none of these statutes or rules references arbitration in any way; therefore, he concludes that the "statutory scheme" does not permit courts to "cede" their decision-making functions to arbitrators. Finally, Mark claims that if section 32-715 conflicts with section 7-917, then section 32-715 should control in this matter because section 32-715 specifically deals with jurisdiction over divorce actions.

"The standard this Court applies when interpreting statutes is well established . . . ." *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 582, 416 P.3d 951, 954 (2018).

> Interpretation of a statute begins with an examination of the statute's literal words. Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction. Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations.

*Id.* (quoting *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 398, 224 P.3d 458, 465 (2008)). "Where two statutes appear to apply to the same case, the specific should control over the general." *V-1 Oil Co. v. Idaho Transp. Dept.*, 131 Idaho 482, 483, 959 P.2d 463, 464 (1998) (emphasis omitted) (quoting *K. Hefner, Inc. v. Caremark, Inc.*, 128 Idaho 726, 732, 918 P.2d 595, 601 (1996)).

Based on the plain and unambiguous meaning of Idaho Code sections 7-901 and -917, we hold that the magistrate court had the legal authority to refer the parties' divorce matter to arbitration. We further hold that nothing in Idaho Code section 32-715 precludes courts from referring divorce actions to arbitration.

We begin by noting that the magistrate court did not lose jurisdiction over the case by referring the matter to binding arbitration. The magistrate court assumed both subject matter and personal jurisdiction over the parties and the parties' divorce upon Elizabeth's filing of the divorce action and Mark's appearance in the case. *See Baiz v. Magistrate Div. of Fourth Jud. Dist. Ct. ex rel. Ada*, ___ Idaho ___, ___, 583 P.3d 469, 473 (2026) ("It has long been the law in this state that courts presiding over actions involving child custody determinations retain continuing jurisdiction over those matters."); *O'Holleran v. O'Holleran*, 171 Idaho 671, 674, 525 P.3d 709, 712 (2023) ("The 'jurisdiction' of the district courts and the magistrate courts is . . . coextensive."). The magistrate court was then empowered to refer the case to binding arbitration per the parties' arbitration agreement. *See* I.C. §§ 7-901, -917 (granting courts the authority to refer an issue to arbitration based on the parties' arbitration agreement). Although the magistrate court delegated the authority to make factual and legal findings to an arbitrator, that delegation did not extinguish the magistrate court's jurisdiction over the matter. Indeed, "once acquired by the court, jurisdiction continues until extinguished by some event." *State v. McIntosh*, 160 Idaho 1, 6, 368 P.3d 621, 626 (2016) (citations omitted); *see also* I.C. § 7-911 ("Upon application of a party, the court shall confirm an award . . . .").

9

Mark's argument misapprehends the word "jurisdiction." His jurisdictional argument is premised on the idea that the magistrate court "ceded" or was "divested" of jurisdiction once the arbitrator was empowered to make binding findings of fact and conclusions of law. But the "[p]recise use of the term 'jurisdiction' refers *only* to: (1) personal jurisdiction over the parties; or (2) subject matter jurisdiction." *State v. Brown*, 170 Idaho 439, 443, 511 P.3d 859, 863 (2022) (emphasis added) (citation omitted). Mark is not arguing that the magistrate court lacked personal jurisdiction to refer the parties' divorce action to arbitration. Nor is he arguing that the court lacked subject matter jurisdiction to refer the matter to arbitration. Rather, Mark is using the term "jurisdiction" imprecisely when what he really means is that the "[magistrate] court committed an error by taking an action that does not comply with the governing authority." *Id.* (citations omitted). Properly framed, Mark's argument becomes a challenge to the magistrate court's *authority* to refer his divorce action to arbitration, not the court's *jurisdiction*.[1] This authority would be derived from Idaho Code sections 7-901 and -917.

Idaho Code sections 7-901 and -917 plainly empower courts to refer any action, with one exception, to arbitration. Section 7-901 states that "[a] written agreement to submit *any* existing controversy to arbitration . . . is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." I.C. § 7-901 (emphasis added). The only exception identified in section 7-901 is for arbitration agreements between employers and employees. *See id.* ("This act does not apply to arbitration agreements between employers and employees or between their respective representatives (unless otherwise provided in the agreement).").

Aside from this exception, we conclude that a court can refer "any existing controversy" to arbitration, provided that the parties have an agreement to arbitrate that complies with section 7-901. The parties' divorce action was an existing controversy, they had an agreement to submit that controversy to arbitration per section 7-901, and there is no exception prohibiting the arbitration of divorce actions in section 7-901. *See id.* We hold, therefore, that the magistrate court was authorized by section 7-917 to refer the Millers' controversy to binding arbitration.

---

[1] We also note that the authority to take a certain action may be expanded or restricted without that court losing subject matter jurisdiction. *See Brown*, 170 Idaho at 444, 511 P.3d at 864; *see also Borah v. McCandless*, 147 Idaho 73, 79, 205 P.3d 1209, 1215 (2009) ("There is nothing in the Uniform Arbitration Act . . . that reflects legislative intent to deprive courts of subject matter jurisdiction . . . ." (internal citations omitted)).

Furthermore, Idaho Code section 32-715 does not preclude arbitration of divorce actions. The text of section 32-715 grants "[e]xclusive original jurisdiction" of divorce actions to the district courts (and magistrate division). I.C. § 32-715. It is true that the *courts* may not exercise jurisdiction over a matter that has been exclusively assigned to a different court. *See JURISDICTION, Black's Law Dictionary*, (12th ed. 2024) (defining "exclusive jurisdiction."). But Mark does not show how a grant of "[e]xclusive original jurisdiction" limits a court's authority to refer a case to a different *forum*—like arbitration—particularly where the statute authorizes the courts to "make all necessary orders to carry out the provisions of this chapter." I.C. 32-715. As such, we hold that section 32-715 does not restrict the district and magistrate courts' authority to refer divorce actions to arbitration.

Moreover, Mark's recitation of the divorce statutes and court rules does not establish that these statutes and rules *prohibit* magistrate courts from referring divorce actions to arbitration. Not one forbids arbitration or the use of other "forums" to decide divorce matters. *See* I.C. §§ 32-705(1), -706(1), -712(1), -717(1); I.R.F.L.P. Rules 601–604, 1002(c), 1004(i), 1005(g), 1006(g)(2). And a number of these statutes and rules even contemplate that divorce matters can be settled in a different forum—mediation. *See* I.R.F.L.P. Rules 601–04. Mark's contention that the authority to adjudicate a divorce action is "vested in the court alone and in no other forum" is therefore unpersuasive.

### 2. Caselaw

Mark argues that this Court's opinion in *Phillips v. Phillips*, 93 Idaho 384, 387, 462 P.2d 49, 52 (1969), precludes parties from divesting the courts of their jurisdiction over divorce matters by contract. He focuses on one sentence of the opinion, in which this Court held that "[t]he parties cannot by contract or agreement divest the court of its continuing jurisdiction in the matter of minor children." *Id.* (citation omitted). Thus, in Mark's view, *Phillips* bars parties from "divest[ing]" the court of its continuing jurisdiction in divorce cases—and he contends that this is precisely what he and Elizabeth did by signing the arbitration agreement. From that premise, Mark concludes that the arbitration agreement, the resulting award, and the order confirming the award are all void. We disagree.

*Phillips* involved a situation in which a divorced husband brought an action to modify a divorce decree. The husband had experienced a change in circumstances and the district court granted him relief by modifying the divorce decree to exclude alimony payments that had been

11

provided for in the separation agreement. *Id.* at 385, 462 P.2d at 50. The wife appealed and this Court affirmed. *Id.* at 388–89, 462 P.2d at 53–54. The focus of the opinion is not on questions of jurisdiction, but again, on the trial court's ongoing authority "to consider and decide those matters necessary to the just and equitable disposition of a cause of action for divorce. . . . This Court has consistently held that the district courts have continuing jurisdiction to enforce and, if necessary, to modify their decrees relating to minor children." *Id.* at 387, 462 P.2d at 52 (citations omitted). Thus, the *Phillips* Court followed the same precedent we have cited above, and nothing therein alters our holding today. Moreover, *Phillips* predated Idaho's adoption of the UAA by about five years and dealt with completely different issues. *See id.* As we have noted, courts are not deprived of their continuing *jurisdiction* in divorce matters when the courts refer those cases to binding arbitration. Therefore, the general statement about jurisdiction in *Phillips* does nothing to restrict the courts' authority to refer divorce actions to binding arbitration.

Furthermore, we note that Idaho's Court of Appeals has already approved of arbitration in divorce actions. In *Hughes v. Hughes*, the Idaho Court of Appeals affirmed a magistrate court order that implemented an arbitration award in a divorce action. 123 Idaho 711, 714, 851 P.2d 1007, 1010 (Ct. App. 1993). Similar to this case, the parties in *Hughes* had stipulated to resolve their divorce action in arbitration. *Id.* at 712, 851 P.2d at 1008. The arbitrator then returned an award dividing the property between the parties. *Id.* However, the award did not purport to divide the community property and debts equitably, nor did it assign any values to the property awarded. *Id.* The husband took issue with this and challenged the award on the grounds that it conflicted with the statutory law governing divorce actions, specifically Idaho Code section 32-712, since the arbitrator failed to make certain findings to support its conclusions. *Id.*

The Court of Appeals resolved the question by first recognizing the authority of the UAA, describing arbitration as "an accepted method of settling differences through investigation and determination, by one or more unofficial persons selected for the purpose, of some disputed matter submitted to them by the contending parties for decision and award, in lieu of a judicial proceeding." *Id.* at 713, 851 P.2d at 1009 (citing 5 AM. JUR. 2d *Arbitration and Award* § 1 (1962)). The court then held that the UAA does not require written findings of fact or conclusions of law with reference to an arbitration award. *Id*. From that premise, the Court concluded that although Idaho Code section 32-712 requires courts to make specific findings when allocating property in a divorce proceeding, those statutory constraints do not "apply when the distribution of spouses'

12

property occurs as a result of an arbitration proceeding." *Id.* at 712–13, 851 P.2d at 1008–09. Having reached that conclusion, the Court of Appeals applied the same standards of review to the arbitration award at issue as it would to any other arbitration award, treating the arbitration of divorce actions no differently from the arbitration of any other action. *Id.* at 713–14, 851 P.2d at 1009–10.

Mark argues that *Hughes* is inapposite because the Court of Appeals did not directly address subject matter jurisdiction. We disagree. In *Hughes*, as here, the party challenging the arbitration award argued that the award was incompatible with a statute governing judicial decision-making in divorce actions. As noted, however, the Court of Appeals implicitly rejected the premise underlying that argument, holding that "[a]rbitration is an accepted method of settling differences . . . in lieu of a judicial proceeding." *Id.* at 713, 851 P.2d at 1009 (citation omitted). The court then affirmed the confirmation of the arbitration award because nothing in the UAA required the arbitrator to comply with Idaho Code section 32-712. *See id.* at 713–14, 851 P.2d at 1009–10. Although the Court of Appeals did not address the jurisdictional argument Mark raises here, the court nonetheless concluded that an arbitration award was binding in a divorce action even though the award lacked findings that a court would have been statutorily required to make. In doing so, the Court of Appeals implicitly demonstrated that divorce actions are arbitrable, a conclusion that is consistent with what we hold today.

**B.**     **The district court did not err in concluding that the arbitration award did not exceed the arbitrator's authority.**

Mark also argues that the arbitration award should be set aside or modified because he believes that the award exceeds the arbitrator's authority by awarding: (1) an unequal distribution of property in lieu of spousal support, and (2) retroactive child support to Elizabeth. Elizabeth disagrees, contending that the arbitrator acted within proper authority when deciding these issues.

As noted above, "[j]udicial review of an arbitrator's decisions is limited to an examination of the award to determine whether any of the grounds for relief stated in Idaho Code §§ 7–912 and 7–913 exists." *Am. Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 398, 94 P.3d 699, 703 (2004) (citations omitted). Therefore, "[j]udicial review of arbitrators' decisions under the Uniform Arbitration Act is extremely limited." *Chicoine v. Bignall*, 127 Idaho 225, 227, 899 P.2d 438, 440 (1995). However, courts are empowered to vacate an arbitration award where "[t]he arbitrators exceeded their powers . . . ." I.C. § 7-912(a)(3). Courts may also modify or correct an award where

"[t]he arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted . . . ." I.C. § 7-913(a)(2).

We hold that the arbitration award did not exceed the arbitrator's authority by making an award on a matter not submitted to arbitration. The arbitration agreement conferred broad powers on the arbitrator to determine both the parties' property division and the amount of child support owed. Therefore, we conclude that the district court did not err when it held that the arbitration decision was within the scope of the arbitrator's authority.

### 1. Unequal Distribution

Mark argues that the arbitration award exceeded the arbitrator's authority because Elizabeth waived her claim to spousal maintenance in the arbitration agreement and the arbitrator's decision mentions spousal maintenance, but not as part of Elizabeth's claim. Mark contends that such an award simply "backdoored" spousal maintenance into the arbitration award. He compares this result to the events that transpired in *Reichert*, claiming that both there and here the arbitrators exceeded their authority by tackling an issue they had no authority to address. We disagree.

In *Reichert*, an employee was injured by an uninsured motorist. 140 Idaho at 397, 94 P.3d at 702. The injured employee then sued his employer's insurance company for uninsured motorist coverage, and the parties stipulated to resolve the dispute through arbitration. *Id.* As part of the arbitration, the parties agreed that "[t]he arbitrator will disregard any potential Worker's Compensation claim and issues of subrogation." *Id.* The arbitrator returned an award for the injured employee. *Id.* at 398, 94 P.3d at 703. Nevertheless, the arbitrator did take the insurance company's subrogation rights into consideration when he limited the amount of interest that the insurance company would owe. *Id.* at 401, 94 P.3d at 706. The injured employee challenged this limitation, arguing that the arbitrator had exceeded his authority by considering potential worker's compensation claims and subrogation rights. *Id.*

This Court agreed with the injured employee. *Id.* The Court noted that an arbitrator exceeds his authority when the arbitrator has "considered an issue not submitted to him by the parties, or exceeded the bounds of the contract between the parties." *Id.* (quoting *Chicoine*, 127 Idaho at 227, 899 P.2d at 440). This Court determined that the parties' stipulation prevented the arbitrator from "consider[ing] any potential worker's compensation claims or issues of subrogation." *Id.* By then

14

considering those potential claims and issues, the arbitrator violated the agreement of the parties and exceeded his powers. *Id.*

The facts before us are materially different. Mark and Elizabeth never agreed to preclude the arbitrator from considering the existence—or more accurately, the absence—of spousal support. Here, the parties' arbitration agreement stated:

> 4. SPOUSAL MAINTENANCE. The Petitioner agrees that she waives any claim to spousal maintenance.
> 5. BEFORE THE ARBITRATOR. The issues before the Arbitrator include the income amounts to be used for child support, setting child support amount, valuation, characterization and allocation of the property and debts in this divorce action.

Idaho law expressly provides that spousal maintenance may be considered when allocating community property. I.C. § 32-712(1)(b)(5) ("Factors which may bear upon whether a division shall be equal, or the manner of division, include . . . [w]hether the apportionment is in lieu of or in addition to maintenance . . . ."). Because the arbitration agreement broadly authorized the arbitrator to allocate the parties' community property, the arbitrator also had authority to consider the statutory factors relevant to that determination, including maintenance. *See id.* The arbitration agreement limited the arbitrator in only one respect: it precluded the arbitrator from adjudicating a claim for spousal maintenance. That circumstance never arose here. Instead, the arbitrator referenced maintenance only as one factor among many when allocating community property, as Idaho Code section 32-712(1)(b)(5) permits.

The arbitrator also considered several other relevant factors: the long duration of the marriage, Elizabeth's advanced age, Mark's high income and substantial assets, Elizabeth's lack of work history, the number and ages of the children still living at home, Elizabeth's limited employment opportunities, her long-standing role as a homemaker, and the disparity in the parties' anticipated social security benefits. The arbitrator's actions were therefore consistent with the statutory framework. Accordingly, the arbitration award did not exceed the arbitrator's authority, and the district court did not err in reaching the same conclusion.

### 2. Retroactive Child Support

Mark also contends that retroactive child support was not a "pending claim" before the arbitrator. He asserts that he has been paying temporary child support since the outset of the case and points to the magistrate court's Temporary Order in support of that assertion. That order,

15

issued before the parties went to arbitration, required Mark to give half of his biweekly paycheck and half of the funds in his business savings account to Elizabeth. According to Mark, this resolved the issue of temporary child support—a position he claims Elizabeth judicially admitted through her counsel's statements to the magistrate court. On that basis, Mark concludes that child support for the relevant period "had already been decided" and was not a "pending claim" subject to arbitration. We disagree.

In the early stages of litigation, the parties were at odds over the division of income and temporary child support. Elizabeth moved the magistrate court to order Mark to pay support and divide community income. Mark responded by moving for a division of the community income, offering to split his biweekly paycheck with Elizabeth, as well as the balance of a business savings account that contained $250,000. At a hearing on the issue, Elizabeth's counsel accepted Mark's offer, leading to this exchange:

> [ELIZABETH'S COUNSEL]: We agreed to the proposal on a temporary basis. It doesn't matter what money is spent. There's no reason to debate about what the income is.
>
> So the proposal to divide the net paycheck and to divide money -- the $250,000 --
>
> THE COURT:  And that's -- [ELIZABETH'S COUNSEL], if you would agree to that, I won't have to calculate child support with the stream --
>
> [ELIZABETH'S COUNSEL]: Right.
>
> THE COURT: -- of income.
>
> [ELIZABETH'S COUNSEL]: Yeah, and I agree, Your Honor.
>
> THE COURT: That just -- that just -- that just frees us up of a lot [sic] argument.

The magistrate court then entered the Temporary Order, giving effect to the parties' agreement. In relevant part, the order provided:

> 6. Mark shall pay to Elizabeth one-half of his net bi-weekly paycheck. Each party shall receive $125,000.00 from the business savings account to be placed in their respective separate bank accounts so that they can pay for their reasonable living expenses and separate legal fees. Existing mortgages and tax bills should be paid from the business savings account.

Mark is correct that he made payments after the Temporary Order was entered. But the order makes no reference to temporary child support, nor does it characterize the income-sharing arrangement as such. Indeed, nothing in the Temporary Order suggests that the magistrate court intended these

16

payments to constitute child support. Rather, the payments appear to reflect a division of community income, consistent with what both parties requested at the time. Accordingly, we conclude that Mark was not paying child support from the outset of the action, as he claims. Nor do we agree that Elizabeth judicially admitted that temporary child support had been resolved through this arrangement.

Judicial admissions are generally those statements "made by a party or attorney, in the course of judicial proceedings, for the purpose, or with the effect, of dispensing with the need for proof by the opposing party of some fact." *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 479 (2004) (citations omitted). Elizabeth never expressly stated that the temporary child support issue had been resolved. She did not admit that the division of community income constituted temporary child support, nor did she concede that she had abandoned any claim for such support. Instead, Elizabeth only acknowledged that there was no need at the time to calculate temporary child support because the parties had agreed to share income and other financial resources. Accordingly, we conclude that temporary child support was still a pending claim before the arbitrator.

Furthermore, the arbitration agreement expressly authorized the arbitrator to "set[]" the "child support amount." That authority reasonably includes determining the effective date of the obligation, not merely the amount owed. The arbitrator therefore acted within the scope of the authority granted by the agreement in awarding retroactive child support. The district court did not err in affirming the magistrate court's decision confirming the arbitration award.

**C.      The district court did not abuse its discretion by awarding attorney fees to Elizabeth.**

Mark also appeals the district court's decision to award attorney fees to Elizabeth. After affirming most of the magistrate court's decision, the district court considered awarding attorney fees and costs incurred on the appeal. In doing so, the district court cited Idaho Code sections 7-914 and 12-121 and concluded that Mark's jurisdictional argument was "pursued unreasonably and without foundation." On that basis, the district court awarded attorney fees to Elizabeth for having to defend against that argument.

Mark argues that the district court abused its discretion in awarding attorney fees because, in his view, fees may not be awarded under Idaho Code section 12-121 when the case involves an issue of first impression or a novel legal question. In support, he cites *Abell v. Abell*, 172 Idaho 531, 547, 534 P.3d 957, 973 (2023), and *McCann v. McCann*, 152 Idaho 809, 823, 275 P.3d 824,

17

838 (2012). Mark further contends that he raised legitimate challenges to the authority of both the magistrate court and the arbitrator, and that he presented good-faith arguments and genuine issues of law on appeal. According to Mark, such arguments do not warrant an award of attorney fees under Idaho Code section 12-121, consistent with our statements in *Snider v. Arnold*, 153 Idaho 641, 646, 289 P.3d 43, 48 (2012).

Idaho Code section 12-121 permits courts to award attorney fees to the prevailing party when the "case was brought, pursued or defended frivolously, unreasonably or without foundation." Typically, "attorney fees may not be awarded under Idaho Code section 12-121 when the case involves an issue of first impression." *Abell*, 172 Idaho at 547, 534 P.3d 973 (citation omitted); *see also McCann*, 152 Idaho at 823, 275 P.3d at 838 ("Attorney fees under I.C. § 12–121 are not warranted where a novel legal question is presented." (citation omitted)). Nor are fees generally given under Idaho Code section 12-121 when the nonprevailing party has "brought the appeal in good faith and where a genuine issue of law was presented." *Snider*, 153 Idaho at 646, 289 P.3d at 48 (citation omitted).

However, merely "asserting that an issue is a matter of first impression is not a 'free pass' to bring issues based on unreasonable arguments." *Ada Cnty. v. Browning*, 168 Idaho 856, 861, 489 P.3d 443, 448 (2021) (citation modified). It remains within the district court's discretion to award attorney fees and costs even when a party characterizes an issue as one of first impression. Although, for the reasons discussed below, our ultimate determination regarding the applicability of section 12-121 to this appeal differs from that of the district court, that difference alone does not establish an abuse of discretion. *See Nelson v. Nelson*, 144 Idaho 710, 717, 170 P.3d 375, 382 (2007) (holding that the question on appeal is whether the trial court abused its discretion, "not whether this Court would have made the same decision.").

We do not consider this case to raise an issue of first impression in any event. The Idaho Court of Appeals has implicitly addressed the arbitrability of divorce actions in *Hughes v. Hughes*. As such, it was already established that it was within the district court's discretion to award attorney fees pursuant to Idaho Code section 12-121. *See Abell*, 172 Idaho at 547, 534 P.3d at 973. Thus, the district court correctly noted that the "right of the court to submit the case to arbitration and the right of the arbitrator to act is well supported by law." Moreover, Mark himself stipulated—twice—to refer this divorce action to arbitration. He challenged the magistrate court's and the arbitrator's authority only after receiving an unfavorable result. These circumstances support the

18

district court's conclusion that Mark pursued his jurisdictional challenge "unreasonably and without foundation." Therefore, we hold that the district court did not abuse its discretion in awarding attorney fees to Elizabeth.

**D.     The case is remanded for consideration of an award of attorney fees under Idaho Code section 32-704(3).**

Elizabeth has prevailed on this appeal and has asked this Court to award her attorney fees and costs on appeal. We decline to award attorney fees at this juncture. Instead, we remand this case for consideration of an award of attorney fees incurred on appeal under Idaho Code section 32-704(3).

Elizabeth asks for attorney fees pursuant to Idaho Code sections 12-121, 7-914, and 32-704(3). We will discuss each request in turn.

Elizabeth argues that she merits an award of attorney fees and costs under Idaho Code section 12-121 because all of Mark's arguments are frivolous. As we have noted, Idaho Code section 12-121 permits courts to award attorney fees to the prevailing party when the "case was brought, pursued or defended frivolously, unreasonably or without foundation." We decline to award attorney fees to Elizabeth under section 12-121. While Elizabeth has prevailed on every issue, we are not of the opinion that Mark's appeal was pursued unreasonably or without foundation. Mark attempted to distinguish *Hughes* with reasonable arguments, and it is our view that his appeal was not pursued frivolously or without foundation.

Furthermore, we decline to exercise our discretion and award Elizabeth attorney fees under Idaho Code section 7-914. Idaho Code section 7-914 states that costs of proceedings and "disbursements" subsequent to the confirmation of an arbitration award "may be awarded by the court" This Court has interpreted "disbursements" to include attorney fees. *Driver v. SI Corp.*, 139 Idaho 423, 430, 80 P.3d 1024, 1031 (2003). Even so, given the posture of this appeal and the nature of this case, we will not award attorney fees on appeal pursuant to section 7-914.

Finally, we consider Elizabeth's request to award her attorney fees based on Idaho Code section 32-704(3). That statute permits courts in divorce actions to award attorney fees based on the disparity of resources between spouses. Although Elizabeth's request may have merit, we decline to exercise our discretion to award fees at this juncture. As we recently explained, "seeking attorney fees pursuant to section 32-704(3) is a fact sensitive inquiry based on evidence that should be presented to the trial court in the first instance, not to this Court on appeal." *Hess v. Hess*, 174

19

Idaho 524, 544, 558 P.3d 254, 274 (2024) (citations omitted). We have explained before that a request for attorney fees under section 32-704(3) should be made to the district or magistrate courts, not to this Court. *See Kelly v. Kelly*, 171 Idaho 27, 48, 518 P.3d 326, 347 (2022) ("It is the policy of this Court to leave the award of attorney fees under I.C. § 32-704 to the trial court . . . ." (citation modified)). Elizabeth may renew her request for appellate attorney fees under section 32-704(3) on remand to the magistrate court.

## V.    CONCLUSION

The district court's opinion is affirmed. The case is remanded to the district court with instructions to remand to the magistrate court for a consideration of appellate attorney fees pursuant to Idaho Code section 32-704(3). Elizabeth is awarded costs on appeal. I.A.R. 40(a).

Justices BRODY, MOELLER, ZAHN, and MEYER concur.